WALKER AS AD. VS. BYERS.

The claims and demands, which the statute contemplates shall be exhibited to the executor or administrator, within two years from the grant of letters, are all claims capable of being asserted in a court of law or equity, existing at the death of the deceased, or coming into existence within two years after the grant of administration, whether due or not, if running to certain maturity.

But not inchoate and contingent claims, or demands, as in *Burton vs. Lockkert's, Ex.* (4 *Eng.* 412), or dormant warranties broken by eviction after the two years : which may be enforced against the heir or distributee, for the residue of the estate ; but not against the executor or administrator.

All claims and demands against the estate of a deceased person, capable of being asserted against the executor or administrator, must be authenticated by the affidavit of the claimant, as provided by the statute, before they can be legally exhibited against the estate, or paid by the representative; except in the case of a suit pending at the death of the testator, or intestate, and which survives against his executor, or administrator, *and perhaps some others.*

It is the duty of the executor, or administrator, to object the want of authentication of any claim preferred against the estate, and if he fails to do so, by plea or motion, it would be his duty, for the performance of which he and his securities would be responsible, to insist on it by way of objection to the admissibility of evidence to sustain the demand.

The special statute of non-claim is the true rule of limitation, as to all claims against the estates of deceased persons : and this, although the claim would be barred by the general statute before the expiration of the two years.

Under such special statute, any interval in the administration would be excluded in computing the period of the two years.

The case of *Erwin, use &c., vs. Turner, surv. ad.* 1 *Eng.* 14, approved : and *Burton ad. vs. Lockert,* 4 *Eng.* 412. *Etter vs. Finn ad.* 7 *Eng.* 632. *Allen vs. Byers,* 7 *Eng.* 593, overruled :

One defendant may have a decree against his co-defendant, upon the justice and equity of the whole case, only where the decree can rest upon matters stated in the bill and admitted by the answer of the co-defendant ; and not on matters stated in the answer of the defendant, and which his co-defendant had no opportunity to respond to by pleading and evidence.

*Appeal from the Circuit Court of Independence county.*

The Hon. W. C. Scott, Circuit Judge, presiding.

Fowler, for the appellant. Neither the bill of Manning, nor of Byers was sworn to ; nor was an affidavit authenticating either claim to be just and true as required by the statute, presented at the hearing or shown by any means ever to have existed ; the bill ought, therefore, to have been dismissed, *Dig. p.* 126, *secs.* 88, *&c.* *Ryan vs Lemon,* 7 *Ark.* 84. *Hudson vs. Breeding, ib.* 446. *Erwin vs. Turner ad.* 6 *ib.* 17, the statute of non-claim being a clear bar. The ordinary statute of limitations may be in-

terposed as a bar to a suit in equity, and where one partner files a bill against others for an account, settlement, &c., as in this case. 1 *Edw. Ch. Rep.* 422, *Atwater vs. Fowler*. 2 *ib.* 333, *Coutant vs. Feaks*. 2 *Hen. & Munf. Rep.* 609, *Wagoner vs. Gray, &c.*

This is not a case of *trust*, for that had ceased, not only by the dissolution of the partnership, but by the death of the appellant's intestate; and the bar attached fully after such cessation of the trust.

The statute of non-claim continued to run until the filing of the cross-bill. A decree can be rendered between co-defendants only where it is based on facts stated in the complainants bill, and admitted by the defendant, sought to be charged by his co-defendant, and in this case there are no allegations or admissions on which such a decree can rest. See 10 *Paige*, 350 *Jones vs. Grant*. 1 *ib.* 268, *Elliott vs. Pell*.

BYERS, contended that the statute of non-claim cannot be considered other than a statute of limitations, and as only applicable to such cases as fairly come within the spirit and intention of the act; and can operate only upon rights of action actually existing. *Burton's ad. vs. Lockhart's ex.* 4 *Eng.* 411. 1 *ib.* 244. 20 *John. R.* 153. 1 *John. Cas.* 73. 15 *J. R.* 467. 9 *Wend.* 312. 1 *Wash. C. C. R.* 178.

That it was the intention of the statute (*Dig. p.* 126, *sec.* 88), to embrace only such claims or demands as were properly cognizable in courts of common law, and not those properly cognizable in courts of chancery, as between partners for a settlement and account.

That the general statute of limitations does not apply in this case, because the parties were partners, and the statute does not apply to trusts, 2 *A. K. Marsh*, 384, 145, 3 *Litt.* 181: and if applicable it would not commence until the last payment made by Byers on the partnership debts.

For the purposes of the statute the commencement of the suit is the date of filing the original bill; as the cross bill was merely ancillary to the original suit (*Story's Eq. sec.* 393. *Danl. Ch.*

*Pl. & Pr.* 1743 *to* 1747) and the court could have entered all necessary decrees for Byers against Walker, his co-defendant, upon the pleadings in the original suit, without a cross-bill.   *Elliott vs. Pell*, 1 *Paige* 263.   *Jones vs. Grant*, 10 *Paige,* 348.

Mr. Justice Scott delivered the opinion of the Court.

This cause was brought here from the chancery side of the Independence Circuit Court, on the separate appeal of Walker. The original bill was filed on the 13th day of March, 1847, by Ichabod M. Manning, against Walker, as administrator of James Pope deceased, and against William Byers : alleging that a certain partnership, which he particularly set out, had existed between himself, Byers and Pope, in his lifetime, from the 12th of February, 1838, when it was formed, until the 24th of March, 1841, when it was dissolved by mutual consent, and when an account, which he to some extent set out, was stated between the partners, and the assets of the concern turned over to Pope and Byers to reduce to money, and pay towards the partnership liabilities, and account for the balance, if any, and praying an account and a decree for whatever sum should be found due to him, against Byers and Walker, as administrator of Pope, the latter having departed this life about the middle of July, 1845, soon after which time Walker administered upon his estate.

Byers answered, admitting many of the material facts, and exhibiting very fully and particularly the alleged stated account, at the time of the dissolution, all the liabilities of the firm, and its assets of every description, and the manner in which they had been disposed of, and showing a considerable loss upon the whole transaction, alleged that he was the sufferer, and prayed relief against both Manning and Walker, as administrator.

Walker, as administrator, answered also, denying all personal knowledge of any of the matters stated in the bill, refusing to admit any thing, and requiring strict proof, prayed to be dismissed with his reasonable costs.   Issues having been formed and depositions taken, the cause first came on to be heard at the

June term, 1848, when, an account was decreed, and the matters referred to the master. At the March term, 1849, the master reported, and at the same term Byers filed his cross bill, to which Walker interposed by answer, the failure of Byers to authenticate his supposed claim, as provided by the statute; the special statute of non-claim, and the general statute of limitation, and denying the allegation, and requiring strict proof, prayed again to be discharged with his reasonable costs. Manning also answered the cross bill, and issues having been formed, the entire cause was heard at the September term, 1850, and the court not being sufficiently advised what decree to render, took time to consider until the 12th of January following, when at a special adjourned session, a final decree was rendered in favor of Byers, against Manning, and against Walker, as administrator, from which the latter appealed to this court. From the foregoing statement of the case, it will be observed that the original bill of Manning was filed about six years after the dissolution of the partnership, and about one year and a half after the grant of letters of administration to Walker, on the estate of Pope. This original bill was not sworn to. Pope died about four years and four months after the dissolution of the partnership, and Walker administered upon his estate about six months afterwards. The answer of Byers to the original bill of Manning, was filed about five days before the expiration of two years from the granting of letters of administration to Walker. This answer was sworn to in the usual manner.

The cross bill of Byers was not sworn to, and it was filed above four years after the grant of letters of administration. The decree appealed from is that rendered by the court below, against Walker, as administrator, and we shall first enquire whether or not that decree was authorized by the cross bill. We shall do so, because in the solution of that question we shall at once get at the real point of law involved in the case. To the cross bill, it will be remembered Walker interposed, by his answer, the three fold defence, that the alleged claim of Byers was not au-

thenticated against him as administrator, in the manner provided by the statute, and was barred both by the general statute of limitations, and by the special statute of non-claim.

The consideration of this defence necessarily brings up several important questions, growing out of the statutory regulations touching the settlement and disposition of the estates of deceased persons, and the rights of those having claims touching an estate, either as creditor or otherwise. Some of these questions have not heretofore been fully considered, and upon some isolated points of the general doctrines involved, two or three of the decisions of this court have tended to confuse, rather than to elucidate the points of law involved in the case before us.

We shall, therefore, in the course of our observations upon these questions, incidentally notice these decisions, and give to them such explanation and qualification as may be necessary.

When one dies and leaves an estate, what claims against it does the statute contemplate shall be authenticated by affidavit, in the manner pointed out by its provisions ? And what is the true statute rule as to limitations? Does the general statute of limitations give the rule? or does the special statute of non-claim, or both combined ? Or the one or the other, at the election of the representative of the estate? These are the questions raised by the decree appealed from, if it is to be considered as based upon the cross bill; and in that light, as we have already said, we shall first consider whether it can be sustained.

In order to arrive at a correct conclusion on any of these points, it would be very unsafe to rely upon any particular provision only of the statute, that might seem to relate directly to the particular point to be determined, much less upon any more minute ground of the mere phraseology of such particular provision ; because it seems perfectly clear when our numerous statutory provisions, touching the estates of deceased persons (all in response to our constitutional provision, on the same subject), are considered together, that the Legislature did not design merely to amend the old laws touching the subject, but to create and set on foot a new and complete system, which would necessarily

make radical changes in the law as applicable to living persons.

In proceeding to this extent, our Legislature has done but little more than to arrange and fix in a permanent system, applicable to all estates of deceased persons, whether solvent or insolvent, principles of equity, and of public policy, that in other States had been often applied to the settlement of estates only that were insolvent, or settled by a resort to equity courts, and elsewhere in the common law had been applied in the settlement of claims *in rem* in general. Beyond this, however, and in combination with these principles, our Legislature has incorporated into this system a safe guard against fraudulent claims, and against collusion, between fraudulent claimants, and the representative of estates in requiring an affidavit from every claimant, which contemplates not only the protection of the just creditor but the distributee. And indeed, the last remark, as to the distributee, is applicable to the whole machinery of our administration system, which, in hedging out the evils of delay so inseparably connected with the settlement and distribution of estates, under the old law, as well as in all its other main objects, looks not alone to the interest of creditors, but has regard also to the interests of the heirs, or distributees, who are often minors, dependant upon the residue of the estate for support and education.

In this system two capital objects seem plainly in view from the various provisions for their attainment; *first*, that the estate of every deceased person after death, shall immediately pass to the custody of the law, to be administered for the benefit of creditors, and after the satisfaction of all claims against it, that shall be presented within two years after the grant of letters testamentary, or of administration, the residue shall in the next place be passed to the heir, or distributee, quit of all claims against it, which the law will allow of, as against an executor, or administrator.

The Probate Court is intrusted with this custody of estates, and that tribunal proceeds *in rem* to adjust the right of all persons interested in an estate ; and disposes of it in accordance with

the provisions of the statute, having for these purposes the most summary and plenary powers within the scope of its jurisdiction, conferred by the constitution and the statutes, administering both law and equity within this scope, according to the exigency of the right to be adjudicated upon.

In this process *in rem*, the executor, or administrator is very nearly identical with the assignee in bankruptcy. In his name, all rights, both against and in favor of the estate, are for the purposes of settlement and distribution, to be asserted in this tribunal and elsewhere.

In such a system, with a tribunal thus constituted, as its effective instrument, we think it clear that the claims and demands which the statute contemplates shall be exhibited to the executor, or administrator in the manner provided by the statute, before the end of two years from the granting of letters, on pain of being forever barred, are all claims capable of being asserted in any court of justice, either of law or equity, existing either at the time of the death of the deceased, or coming into existence at any time after the death, and before the expiration of the two years—including, of course, all claims, or demands, running to certain maturity, although not yet payable, to be adjusted presently, upon equitable principles of discount according to the rate of interest when matured, or to be provided for at the day of maturity without discount, and excluding such claims only as might be inchoate and contingent, like that in the case of *Burton vs. Lockhart*, (4 *Eng. R.* 412), and like dormant warranties, broken by eviction after the expiration of the two years.

In excluding such possible claims, indicated in the latter class, the statute does not destroy them, only as against any administrator, or executor, and in preferring to them all claims that exist at the death, or come into existence at any time before the expiration of the two years, and therefore leaves them to be asserted against the heir, or distributee, as such, as a *superior* equity to *his*, in the assets that may have descended to, or been distributed to him after the estate of a deceased person has been administered for all the purposes contemplated by law. Where-

as every species of claim or demand, either legal or equitable, which comes within the scope of the administration, as we have defined it, will be forever barred, as well against the heir or distributee, as the executor or administrator, if not *exhibited* in the manner provided by the statute, by the end of the two years.

From this exposition of our administration system, and we can reasonably come to no other conclusion, than that this is the *true one* contemplated by the Legislature; it results that where one dies and leaves an estate, every claim or demand against it, for which it is liable, when in the course of administration, in whatever manner asserted, must be authenticated by the affidavit of the claimant, as provided by the statute, because in no other way can a claim be exhibited, in accordance with the statute, to prevent its being forever barred.

To this general rule, however, the statute itself points out one exception—that of a suit pending against any person at the time of his death, which, by law survives against his executor or administrator, and although this express exception might seem to exclude all other by a common rule of interpretation, there are doubtless other exceptions, as for instance all proceedings on the part of the widow, for dower : which are grounded on a right in the property itself, out of which she is to get her estate of dower; proceedings for specific performance of a contract which do not seek to diminish the assets, that the law takes into custody—*scire facias*, to revive a judgment against an executor or administrator, because, such revival does not operate to exhibit the judgment revived, affidavit being nevertheless required, when it might be presented for allowance and classification. Nor need this enumeration of exceptions exclude the idea of other possible cases, that might not interfere with the policy of the statute.

This provision of the statute, requiring the authentication of all claims against the estate of a deceased person, as a pre-requisite of their exhibition in some one of the modes pointed out by the statute—and unless exhibited they can never be lawfully satisfied out of the estate taken into the custody of the law to be administered—could always be evaded at the election of the ex-

ecutor or administrator, if a failure to plead the want of the authentication was a waiver of it, because of the provision of the 170th section of the administration act, which provides that "No executor or administrator, or the security of any executor or administrator, shall be made liable for more than the amount of assets of the testator or intestate, on account of having failed to plead or make defence, or on account of any omission to plead, or mistake in pleading, or false pleading of any such executor or administrator;" and therefore, it could not have been designed by the Legislature, that the want of authentication should be set up in no other manner than by way of a plea. Such an idea would be directly at war with so much of the design of the Legislature, as related to collusion between a fraudulent creditor and the representative of an estate, because, whenever the representative might desire to facilitate a fraudulent creditor, he would either turn him over to the Circuit Court in the first instance, or reject his claim, to give him an opportunity to go to the Probate Court, and in either case fail to plead the want of authentication without responsibility to himself or his securities, and thus defeat so much of the policy of the law. It must, therefore, have been the intention of the Legislature to have sustained the policy of the law by some means beyond the mere interposition of the objection by means of a plea or motion, and cumulative of this means.

If the entire 170th section of the administration act, which we have above copied, be held to apply strictly to matters of defence, by means of the pleadings, which, we think was clearly intended, and that the provision as to authentication, was designed to work such a change in the law, as to make all evidence inadmissible, to sustain a claim against the estate of deceased persons, until it had been first authenticated, as provided by the statute ; then, in case the objection had not been properly interposed by a plea or motion, it would be the duty of the executor or administrator, for the performance of which he and his securities would be responsible, to insist on the objection, by way of an objection to the admissibility of any evidence offered to sustain the claim,

until it should be first made to appear, on the part of the claim-
ant, that his claim had been duly authenticated before the com-
mencement of the suit in which the evidence was offered.    This
would place him and his securities upon the same footing as to
responsibility, as if under the provisions of sections 88, 89, 97,
98, &c., of the administration law, (Dig. 126, 7 & 8), he had by
his own act out of court, allowed a claim without authentication.
Accordingly we adopt this construction of the statute, and the
consequence is that even in a case where the contract is in writ-
ing, and as against a living person, when the foundation of a suit,
could be read in evidence without proof of its execution, unless
denied by sworn plea, as provided by the statute, it could not yet
be read in evidence, (even if its execution were proven, as at com-
mon law), in a suit in the Circuit or Probate Court, against an
executor or administrator, until the authentication had been
made to appear of a date before the commencement of the suit,
in which it might be offered in evidence.

The next question we are to consider is as to the true statute
rule operating upon claims against the estates of deceased
persons.    Does the general statute of limitations give the rule,
or the statute of non-claim, or both in combination?    As all
claims, not exhibited within two years from the granting of the
letters, are to be forever barred, it follows that however long a
claim may have to run under the general statute, it cannot sus-
tain it even one day beyond the end of the two years, and there-
fore, it is that to this extent at least, the general statute of limi-
tations is displaced by the special statute of non-claim, because
of the inconsistency of the two rules, unless the latter could come
in like a proviso and cut the former down.    And if, in the on-
ward course of the general statute of limitation, it would run out
on a given claim the same day that the two years would expire,
which would be a case in principle like where the general sta-
tute was cut down by way of such a proviso as that supposed,
one or the other would be useless, because they would both per-
form the same office in sustaining the claim in full life, if it be
true, that both are applicable.    But it is not true in such a case

that they both perform the same office, because the claim is sustained in full life, not because an action was commenced upon it, within a certain time after an action accrued, but because it was exhibited before the end of two years after the granting of letters. If it had not been exhibited within this two years, it would have been barred, however short the time since an action had accrued, or although no action at all had accrued, upon a debt not yet due, but running to certain maturity. It would seem then clear enough that, in such a case as this also, the rule of the general statute of limitation was displaced by the rule of the special statute of non-claim, because the former could be of no use at all to either party, there being no place left for its operation, either in itself or in combination with the special statute of non-claim.

It has been supposed, however, that where the general statute runs out before the expiration of the two years, it might operate as well as the special statute of non-claim, because there would be then some place left for its operation that would not be inconsistent with the operation of the latter, and therefore it may be relied upon at the election of the executor or administrator.

This idea is founded upon a misconception of the true nature, and the true rule of the statute of non-claim, and in consequence assumes as true, what is not true, in supposing any place is left, even in this case, for the operation of the rule of the general statute. The statute of non-claim is itself but a statute of limitation, and is nothing else. The most plainly marked distinction, that has ever been drawn between them by the adjudged cases, was that the executor or administrator was bound to plead the statute of non-claim, but could plead the general statute of limitation or not at his election. And this was based upon the ground that statutes of non-claim were for the benefit of estates, and of creditors and heirs, interested in them, and that the executor or administrator was a trustee for them. But even this distinction may be challenged as sound law, the learning upon which it is based being as well applicable to the general statute of limitation as to the special statute of non-claim, and is parcel

32

of the exploded idea, that an executor or administrator may revive a debt against his testator or intestate, by a part payment, or an express new promise at least, which grew up under a theory, that regarded the executor as the owner of the estate, and responsible not only to the extent of assets, but to a greater extent, if he did not show in defence that he had fully administered, and therefore cannot be tolerated in a system where, for most purposes, he is regarded only as trustee, or assignee, and cannot bind the estate by any contract of his own, and where nothing short of a contract by the party to be bound, can revive a cause of action barred by the statute of limitation. But while the nature of the two statutes is identical, the rule given by each is essentially different. The one bars causes of action, if the suit be not commenced within a given time after accrual; the other, having a wider scope, bars all claims and demands, without regard to the time of accrual of the cause of action, if not *exhibited* within a fixed period of time. The statute of non-claim is like the statute of limitations that existed in early times in England; before the first general or prospective statute, in being temporary, and in running off from a fixed point of time; as from the first landing of King Richard, the 1st, and not unlike our earlier pre-emption laws. In both instances the experience under the operation of the temporary enactment proving the good policy of prospective and permanent enactment.

As a mere statute of limitations then, giving a rule of limitation which runs, not from the accrual of the cause of action, but from the granting of the letters, if the general statute still operated there would be two limitations operating at the same time upon the same demand, one of which was founded on policy, which had been itself entirely displaced by the substitution of a new system, designed by direct means to effect at once the very object that the policy overthrown sought to achieve, by means of stimulating, merely, speedy settlement between debtor and creditor.

This system, assuming to make all such *settlements at once* upon the death of any deceased person, and forthwith taking the cus-

tody of all available assets, calls for the exhibition of all subsisting claims, upon pain that all such shall be forever barred, if not exhibited by the expiration of the two years from the granting of the letters, and staying all process in the courts, except such as shall be needful for the exhibition of demands.   In effect regarding the whole period, from the time of the death to the expiration of the two years from the granting of letters, as a single point of time, for purposes of exhibition of claims subsisting at the time of the death, or which may come into existence at any time before the expiration of the two years.

Under such circumstances, to suppose there was any place left for the operation of the general statute of limitations, would be to suppose that a rule based upon a particular reason could properly have operation in a case without the reason, or could exist where the reasons on which it rested had no longer existence. And if this was not so, all that policy of our administration system, which looks to the speedy settlement of estates, that distributees and legatees may, as soon as practicable, be placed in the enjoyment of their rights in the residue, would, in general, be entirely overthrown.   We therefore think this court was correct in coming to the conclusion, in the case of *Erwin, use vs. Turner, surviving admr.* (1 *Eng. R.* 14), that the general statute of limitations was designed to operate upon the rights of parties while living, and was not designed to apply after death to claims against the estates of deceased persons, the statute of non-claim, as to such estates, giving the rule of limitation, and was wrong in holding the contrary, in the case of *Etter vs. Finn, as admr.*, 7th *English R.* 632.    Although the principle, for which the case of *Aiken vs. Baily* (5 *Eng. R.* 584), was cited as authority in that case, is undoubtedly sound, and is applicable not only to the general statute of limitation, but also to the statute of non-claim, in a proper case, as where the first administrator might die, or resign within the two years, and some time might elapse before a second administrator should be appointed, the time during which there was actually no administrator, would not be computed as a part of the two years.

We think that this court was also wrong in holding, in the cases of *Burton, admr. vs. Lockhert, executor,* 4 *Eng R.* 412, and in *Allen vs. Byers, admr.* (7 *Eng. R.* 593), that the statute of non-claim runs from the accrual of the cause of action upon the claims respectively. In the first case the claim sprung into existence from a dormant and contingent state, some time after the expiration of the two years from the grant of letters, and was therefore barred forever, as against an executor or administrator, and could only have been asserted, as against the heir or distributee, to be satisfied out of any residue of estate descended or distributed. The second case was where a security had paid a debt after the expiration of the two years, and was consequently a claim of the same description.

If, however, he had paid the debt and exhibited his claim before the expiration of the two years, it would have been entitled to share against the estate as other claims exhibited in due time. The authorities, upon which the latter decision was based, were from States whose administration systems differ from ours in taking the assets of an estate into the custody of the law, only in cases where the estate is insolvent, and where the statute of non-claim is not construed as displacing the general statute of limitations as to claims not arrived at maturity.

In the light of these views then, it is clear that the decree in this case cannot be sustained upon the cross bill of Byers, because there is no pretence either that the cross bill was sworn to, or that it was filed, until long after the expiration of two years from the grant of letters of administration to Walker.

This first view of the case at bar having made it necessary that we should examine the doctrines discussed in order to determine the two points settled, we will remark before proceeding to the next view, as they are questions of some importance, that we have examined them with care, and have not determined them until after considering their probable consequences. And in these we see no probable evils at all to be weighed against the manifest good to be achieved by stimulating the speedy settle-

ment of estates, in accordance with the unmistakable spirit of our administration system, palpably manifest.

In the next place, Byers insists, that as his answer to the original bill of Manning against himself and Walker, as administrator, was duly sworn to; was filed before the end of the two years from the granting of the letters, contained all the material matters subsequently set up in the cross bill, and was sustained by the proofs, that therefore the decree in his favor against his co-defendant, Walker, can well rest upon these pleadings and proof, irrespective of the cross bill, under the rule, which under certain circumstances, allows of decrees over between co-defendants, or of cross decrees between them, founded upon the justice and equity of the whole case. Such a practice is allowable when such cross decrees can rest upon the matters stated in the bill, and admitted by the defendant, sought to be changed by his co-defendant, either by suffering the bill to be taken as confessed, or by direct admissions in his answer.

But no case is cited that goes the length of allowing a decree in favor of a defendant against his co-defendant, on matters stated in the answer of the defendant, in whose favor the decree is rendered, which the defendant decreed against, had no opportunity to respond to by pleading and evidence, as he would have had if those matters had been stated in the original bill. And this is precisely the state of the case before us, and although Byers was entitled to a decree against the plaintiff, Manning, for any balance found in his favor, upon the settlement of the accounts which he had demanded by his bill, because by this demand of a settlement of accounts, he thereby gave a pledge that he would submit to a decree for any balance found against him. (*Hood & Wife vs. Lee*, 5 *Monroe's R.* at *p.* 66). There was no such pledge, either express or implied, between Walker, as administrator, and Byers, and Walker had no opportunity to respond to any other than the matters stated in the bill, while the decree against him is founded upon the matters stated in the answer of Byers, to which he had no opportunity to respond. The general rule is distinctly stated to be (*Daniel's Ch. Pr. 3d*

*vol. p.* 1743), that " one defendant cannot have a decree against
a co-defendant without a cross bill, with proper prayer and pro-
cess, or answer, as in an original suit," and a defendant can, in
general, pray for nothing in his answer but to be dismissed the
court.   If he has any relief to pray for, he must do so by a bill
of his own, or by answer in the nature of a cross bill, under the
provisions of the statute, *Calhoun vs. Erwin,* 4 *Ala. R.* 452. *Cum-
mins' heirs vs. Gill's heirs,* 6th *Ala. R.* 562; *Morehead vs: Prater
and Smiley,* 1 *Bibbs R.* 316; *Shelby & Roberts vs. Smith's heirs,* 2
*A. K. Marshall's R.* 514; *Talbot vs. McGee,* 4 *Monroe R.* 378), and
if he seeks such relief against a co-defendant, by this statutory
means, he must, after answering the original bill, proceed to
charge his co-defendant as he would by a regular cross bill, and
take steps to get his answer, because otherwise, although it
might be in the nature of a cross bill, as against the complain-
ant, it would not be as against his co-defendant, (*Talbot vs. Mc-
Gee,* 4 *Monroe,* 378, *Shelby & Robertson vs. Smith's heirs,* 2 *A. K.
Marsh. R.* 514.)

But in this case, if Byers had shown himself to be within any
exception to the general rule, thus laid down, so as to be entitled
to a decree against his co-defendant, Walker, upon the plead-
ings and evidence, his decree against Walker could not be sus-
tained, because it would have neither pleadings or evidence to
rest upon.   The bill of Manning was not sworn to, and although
Walker might be considered as having waived this objection as
to him, by reason of his never having in any way taken this spe-
cific objection to the proceedings by him, he cannot be supposed
to have waived it as to Byers, either as to the pleadings or the
evidence, because, in resisting the only apparent effort of Byers
to seek a decree against him as administrator, he expressly in-
terposes this specific objection, which in all fairness should avail
him, as well when Byers falls back upon the bill of Manning to
sustain his decree to any extent, as when he relies upon his own
cross bill.   When then he is allowed the benefit of the objection
to this extent, it cuts out the bill of Manning as to Byers, and
with it falls Byers' answer, which is a dependancy, and even if

the pleadings were not thus overthrown, all the evidence in the entire case was, as in favor of Byers and against Walker, incompetent as to Walker, in the face of his specific objection, for want of authentication standing in the record, and insisted upon at the hearing.

The decree then against Walker, as administrator, cannot be sustained, either upon the cross bill, or upon the pleadings and evidence in the original suit of Manning. It is therefore unnecessary for us to examine Walker's third ground of defence, which is that the claim for an account against him as administrator, was not a subsisting claim or demand at the death of his intestate, for the alleged reason, that it was then barred by the lapse of time, within the doctrines applied during the present term of this court in the case of *Adams, admr. vs. Creed Taylor.*

We are of opinion, therefore, that so much of the decree of the court below, as is against the appellant Walker, as administrator, ought to be reversed and held for nought, that the bill and cross bill, as to him, ought to be dismissed, and that he should recover his cost. Let this be done and this cause remanded to the court from whence it came with instructions so to reform the decree of that court, that all of it that now appears either against the appellant severally, or against him jointly with Manning, may be set aside and held for nought, and the residue of the decree be so formed that it may stand and be executed as a several decree against Manning.

WALKER, J., not sitting.