## BISCOE ET AL. VS. MADDEN AS AD.

The two years statute of non-claim, and not the general statute of limitation, gives the rule of limitation to claims against the estates of deceased persons, not barred at the time of the death of the debtor. (*State Bank vs. Walker ad.,* 14 *Ark.* 236; *Walker vs. Byers, Ib.* 259.)

And so, to a claim against the estate of a deceased person prosecuted in the Probate Court, a plea, that the cause of action did not accrue within three years (the period of the general limitation as to such claims,) before the commencement of the suit, is no answer to the demand.

Where the plaintiffs, to the plea of the statute of limitations, reply that they instituted suit within the statute bar, suffered a non-suit, and again sued on the same cause of action within the year, it is no objection to the plea, nor to the proof in support of it, that the first suit was an erroneous proceeding; nor that other persons were plaintiffs therein — as where the first suit was brought by the original Trustees of the Real Estate Bank, after an assignment of the note sued on to the residuary Trustees, and the second was by the residuary Trustees alone.

*Writ of Error to Pope Circuit Court.*

Hon. WM. H. FEILD, Circuit Judge.

CUMMINS, for the plaintiffs.

WATKINS & GALLAGHER, for defendant.

534        CASES IN THE SUPREME COURT

Biscoe et al. vs. Madden as ad.        [JANUARY]

Mr. Justice Scott delivered the opinion of the Court.

This case was brought here by writ of error to the Circuit Court of Pope county. The plaintiffs in error seek to reverse the judgment of that court, affirming in this case the judgment of the Probate Court of that county, refusing to allow, against the estate of James Madden, deceased, the claim in question. That claim, as appears from the bill of exceptions taken in the Probate Court, was founded upon a promissory note, which is here copied, and was sustained in the manner which we will then state in substance:

$1491 50.        ———— COUNTY, 1st day of July, 1843.

On or before the 1st day of July, A. D. 1844, we, Philip Madden, as principal, and J. Moreland, and James Madden, as securities, jointly and severally promise to pay to Lambert Reardon, Sam C. Roane, Ebenezer Walters, Henry L. Biscoe, William F. Moore, John Preston, Jr., Sandford C. Faulkner, Anthony H. Davies, Silas Craig, George Hill, James H. Walker, Enoch J. Smith, Lorenzo N. Clark, John Drennen, Robert S. Gibson, as trustees of the Real Estate Bank of the State of Arkansas, and to their successors and survivors, or to their order, one thousand four hundred and ninety-one dollars and fifty cents, payable and negotiable at the office of said trustees, at Van Buren, for value received, with interest on said sum from date, at the rate of eight per cent. per annum. (The said trustees are hereby authorized to insert the date of this note from the time the same is accepted and negotiated by them.)

PHILIP MADDEN,
J. MORELAND,
JAMES MADDEN."

Endorsed as follows, to wit:

"Pay Henry L. Biscoe, Sandford C. Faulkner, George Hill,

John Drennen and Ebenezer Walters, residuary trustees, without recourse.

(Signed by the several payees.)

*April 2d,* 1846."

Next following, are copies *in haec verba* of this note and the endorsement, and then an affidavit, of which the following is a copy, *to wit :*

"STATE OF ARKANSAS,   }<br>County of Crawford, }

I, John Drennen, one of the residuary trustees of the Real Estate Bank of the State of Arkansas, being duly sworn, do say, upon oath, that nothing has been paid or delivered towards the satisfaction of the above annexed and foregoing demand, *to wit :* of the note whereof the annexed and foregoing paper is a true copy, and that the sum of fourteen hundred and ninety-one dollars and fifty cents, with interest thereon, at the rate of eight per centum per annum, from the first day of July, A. D. 1843, being the sum above demanded, is justly due.

JOHN DRENNEN.

Sworn to and subscribed before me, this 18th day of June, 1849.

R. P. PRYOR, *J. P.*"

Then follows, *to wit :*

"The within demand was presented to me, and the original note exhibited, and a copy thereof delivered to me, this 17th day of August, A. D. 1849, and as administrator of the estate of James Madden, deceased, do hereby refuse to allow and class the same.

THOMAS MADDEN.

Filed in my office on the 17th day of September, 1849.

W. STOUT, *Clerk.*"

At the same time, the claimants filed in the clerk's office of

the same Probate Court, a notice, of which the following is a copy, *to wit:*

"To THOMAS MADDEN, *Administrator*
                *of the estate of James Madden, deceased,*

SIR: You will please take notice, that on the first day of the next term of the Probate Court, in and for the county of Pope, in the State of Arkansas, at a court to be holden at the court-house, in said county and State, on the first Tuesday after the 4th Monday of October, next, we will present to said court, our claim against said estate of James Madden, deceased, for allowance; which claim is founded on a certain promissory note, in the words and figures following, *to wit:* (Here follow copies of the note, and of the endorsements:) "which claim has been presented to you, the original note exhibited, and a copy delivered to you, and which you have refused to allow and·class. This 18th day of August, A. D. 1845.

                     HENRY L. BISCOE,

                     GEORGE HILL,

                     JOHN DRENNEN,

                     SANFORD C. FAULKNER,

                     Surviving residuary trustees of the Real Estate Bank of the State of Arkansas.

                     By A. PIKE, *Attorney.*"

Then follows the return of the sheriff, showing that he executed the foregoing notice upon the administrator, in person, on the 28th day of August, A. D. 1849. At the return term, both parties appeared in the Probate Court, by their attorneys, and upon the part of the administrator, the following plea was filed:

"And the said Thomas Madden, as administrator of the estate of James Madden, by attorney, comes and defends the wrong and injury, when, &c., and says, that the said plaintiffs ought not to have or maintain their aforesaid action against him; because,

he says, that said supposed cause of action did not accrue to said plaintiffs at any time within three years before the commencement of suit, and this he is ready to verify," &c.

To this plea the claimants replied as follows, *to wit:*

"And the said plaintiffs, as to said plea, &c., *precludi non,* because they say, that heretofore, *to wit:* on the 20th day of July, A. D. 1846, and within three years next after the accrual of the cause of action herein, that they, the said plaintiffs, together with Lambert Reardon, Sam. C. Roane, Ebenezer Walters, William F. Moore, John Preston, Jr., Anthony H. Davies, Silas Craig, James H. Walker and Enoch J. Smith, survivors of Lorenzo N. Clark and Robert S. Gibson, who, with these plaintiffs, were the original trustees and assignees of said Real Estate Bank of the State of Arkansas, instituted their action of debt against the said intestate, James Madden, and his co-contractors, Jeremiah Moreland and Philip Madden, in the Circuit Court of the county of Johnson, in the State of Arkansas, on the identical promissory note now presented to this court for allowance, which action the original trustees and assignees of said Real Estate Bank continued to prosecute in said Circuit Court of Johnson county, until the March term thereof, A. D. 1848, at which term, and on the 7th day of said month, said original trustees and assignees of said Real Estate Bank, suffered a non-suit therein, and these plaintiffs aver, that afterwards, *to wit:* on the 23d day of June, 1848, and before the expiration of one year from the time of suffering said non-suit, they, together with one Ebenezer Walters, a residuary trustee of said Real Estate Bank, and as assignees of said original trustees of said bank, instituted their action of debt against the said intestate, James Madden, and one of his said co-contractors, *to wit:* one Jeremiah Moreland, in the Circuit Court of Johnson county, aforesaid, on the identical note now presented to this court for allowance, which action these plaintiffs and the said Ebenezer Walters continued to prosecute in said Circuit Court of Johnson county, until the September term thereof, A. D. 1848, at which term of said court,

38c

and on the 14th day of said month, these plaintiffs, and the said Ebenezer Walters, residuary trustees as aforesaid, suffered a non-suit therein, and these plaintiffs aver, that afterwards, *to wit:* on the 17th day of August, A. D. 1849, and before the expiration of one year from the time of suffering said last mentioned non-suit, they, as surviving residuary trustees, and assignees of said original trustees of said Real Estate Bank, instituted this, their action on the same identical promissory note mentioned, by exhibiting their claim against the estate of James Madden, deceased, to Thomas Madden, as administrator of said estate, and delivering to said administrator a copy of said promissory note, with the assignments thereon, and exhibiting to him the original promissory note, and probate thereof, and this they are ready to verify," &c.

To which plea there was a general rejoinder and issue in short upon the record by consent, and the cause submitted to, and tried by the court. And the court upon finding the issue joined for the administrator, rejected the claim and refused to allow and class it. To which the claimants excepted, and thereupon moving for a new trial, because the court had rejected the claim, and had found contrary to law and evidence, which was overruled, tendered their bill of exceptions setting out the whole case and and all the testimony, which was regularly made a part of the record: and then appealed to the Circuit Court.

Besides the facts already stated, it also appears from the bill of exceptions—the transcripts of the several records of the Circuit Court of Johnson county, being therein copied, *in haec verba*—that the two several suits were brought, and non-suits suffered, as stated in the plea. That Thomas Madden admitted that he was the administrator of the estate of James Madden, deceased, and that, as such, the claimants regularly and legally exhibited to him their claim in question, on the 17th of August, A. D. 1849, that he that day refused to allow and class it, and that on the 28th of the same month, they notified him regularly of their purpose to proceed for its allowance in the Probate

Court. It also was shown by testimony, that the note in question was the same that is mentioned in the proceedings in the Johnson Circuit Court, as shown in the aforesaid transcripts of the records of that court.

Since the full examination of the question in the case of *Walker as ad. vs. Byers*, 14 *Ark. Rep.* 247, it has been uniformly held in this court, that the two years' statute of non-claim gives the rule as to claims against the estates of deceased persons, and not the general statute of limitations. "That is to say, that under our administration system, as regulated by statute, when a party dies, all subsisting claims against him, not then barred, are put on the *same footing*, and may be presented and allowed against his estate at any time within two years from the grant of letters; and if not presented within that time are barred, without any saving or exception in favor of disabilities, and without reference to the length of time such claims might have had to run as against living persons under the general statute." *State Bank vs. Walker as ad.*, 14 *Ark. Rep.* 236. "Our law, in effect, regarding the whole period, from the time of his death, to the expiration of the two years from the granting of letters as a *single point of time* for purposes of exhibition of claims *subsisting at the time of the death*, or which may come into existence at any time before the expiration of the two years." *Walker vs. Byers*. page 259.

In a word, although the general statute of limitations has begun to run in the life-time of a creditor in favor of his debtor, it will run on, notwithstanding the death of the creditor, the debtor remaining in life, as in the case of *Brown ad. vs. Merrick & Fenno*, 16 *Ark. Rep.* Nevertheless, when the debtor should die, it would immediately cease to run, because, effectually displaced at once under our law, by the statute of non-claim, which runs off alike against all subsisting claims against the estate, not barred at the death of the debtor, not from their *accrual* as the statute of limitations did, but from the *grant of letters* upon his estate.

Hence, on the presentation of a claim for allowance against an estate, no question as to the general statute of limitation can be legitimately raised, and no plea predicated upon it can be of any avail, unless it goes to the point, that by reason of the operation of that statute upon the claim, in the life-time of the deceased, no action could have been maintained upon it at the time of his death.

If an action could have been maintained upon it at the time of the debtor's death, it may be allowed and classed, at any time before the expiration of the two years from the grant of letters upon his estate, although had he lived, the statute of limitations would have run out on the very next day after his death. So, a claim that might have had five years to run, had the debtor lived, or one not due for five years to come, would be barred if not presented within the two years. These being but consequences of the effectual displacing of the general statute by that of non-claim.

Under this state of the law, it does not seem material to the determination of this case, to decide the question discussed, as to what constitutes such a commencement in the Probate Court of a new action, after a non-suit in the Circuit Court, as will repel the statute bar, under the provisions of the 24th section of the limitation law. Because, the allegation in the plea, that the cause of action did not accrue to the claimant at any time within three years before the commencement of their suit is no answer to their demand; and, consequently, they have no need to reply to it at all. It was like pleading the statute, as if in force, after it might have been repealed by the Legislature.

And if the administrator had set up in his plea that the cause of action did not accrue within three years before the death of his intestate—or that, while the statute had operative force upon the claim, the bar, by efflux of time, became perfect—with the design to show, that at the time of the death of the intestate, the claim was not such a subsisting one against him as should be allowed against his estate; even then, a replication, setting up

that suit had been brought within the three years, non-suit suffered, the death of the intestate within the following year allowed for the new suit, and the exhibition of the claim and proceedings to procure its allowance in the Probate or Circuit Court, at any time before the expiration of the two years after the grant of letters, would, doubtless, have repelled the statute bar, as effectually as the allegation of a new suit brought in the Circuit Court within the one year, would have done so, had the intestate lived through that entire year.

Because, inasmuch as the general statute of limitations ceases to act on the claim from the time of the death of the debtor, time can no longer be computed, under that statute, for any purpose; and the statute of non-claim succeeding to it, and occupying its place, that statute allows two years from the grant of letters of administration for the prosecution of all subsisting claims, indiscriminately, which were recoverable against the intestate in his life-time, or the representative of his estate after his death.

The remaining point made by the counsel for the administrator, is, that the claim was barred in the life-time of the intestate, and previous to the suit brought by the endorsees, on the 23d of June, 1848. That is to say, that inasmuch as when the suit was brought, which was instituted on the 20th of July 1846, by all the surviving original trustees, the note upon which it was founded had been, before that time, *to wit:* on the 2d of April, 1846, endorsed in full to the five residuary trustees; that suit, and the non-suit therein suffered, cannot be made available by the latter under the 24th section of the limitation law to repel the statute bar, when set up by the survivors of them in their suit instituted within one year after that non-suit: That, as the two suits were brought by different plaintiffs, they were suits by different *parties;* and as in the one suit a primitive title to sue was alleged, and in the other a derivative one, they were not suits for the same *cause of action.*

It so happens, in fact, that all the parties plaintiff in the last

suit, were parties plaintiff in the first one, joined with other parties plaintiffs, who were not joined in the last.

If the provisions of the limitation law in question had heretofore received a hard and rigid construction, these propositions would strike with more force. But such does not appear in the several previous decisions of this court, where this and other kindred sections of the limitation law have been presented, but the contrary. And this, doubtless, in accordance with the true intention of the Legislature; because these several provisions, having all resulted from hardships pointed out, or from equitable constructions given by the courts, of the statute of the 21st James 1st, the main features of which are retained in our own, are therefore in their nature remedial.

It cannot be rationally supposed that the Legislature designed simply to allow the privilege of renewing suits in those cases only where the plaintiff would take a non-suit, arbitrarily and without cause; because this would be to provide means of protracting litigation vexatiously, without seeming to secure, at the same time, any counterpoising equivalent.

But when it would be supposed that reference was had to such defects in legal proceedings as ordinarily render non-suits necessary, prudent or proper, when parties are, *bona fide*, seeking the enforcement of their rights in courts of justice, and which, with all the learning of the profession, are often developed in the proceedings, when in the most skilful hands, at an unexpected moment; a more rational purpose would seem to have been in view. At any rate, the court, without pronouncing any general rule— and it is not our purpose to do so now—have in several cases, gone beyond the letter of the statute, and, to some extent at least, administered its spirit and obvious intent.

Thus, it has been held that the non-suit need not be a technical one, but the statute equally applies to a dismissal of the suit, as where the party goes out of court, submitting to the order of court requiring him to do so. *State Bank vs. Fowler and*

*Pike*, 14 *Ark. Rep.* 162; *State Bank vs. Magness*, 6 *Eng. Rep.* 343; *State Bank vs. Arnold, Ib.* 348.

So it has been held that the former suit, and the latter one within a year after non-suit suffered, are between the same parties, though in the latter suit, only one of the defendants in the former suit be sued.

Thus, in the *State Bank vs. Roddy et al.*, 7 *Eng. Rep.* 767, the court says: "The first action was commenced against other makers of the same note, who are not sued in the present action. The defendants in this suit were, however, parties to the first suit. As we have repeatedly decided, the question is not, whether a *joint liability* exists against the makers of the note, but whether a former suit was commenced against the defendants in this suit on the *same cause of action.* In such case it has been decided that it is no variance that other parties appear to have been sued in the first action, not declared against in the second." *State Bank vs. Magness*, 6 *Eng.* 344; *State Bank vs. Sherrill, Ib.* 334; *State Bank vs. Gray*, 7 *Eng. Rep.* 760; *State Bank vs. Davis, Ib.* 768; *State Bank vs. Henderson, Ib.* 774.

So, also, it was held in the case of the *State Bank vs. Peel et al.*, 6 *Eng. Rep.* 750, that a writ which was voidable, and had been for that reason quashed, was, in connection with the declaration, evidence of the fact that a suit had been instituted so as to avoid the statute bar. In that case, the court says: "A declaration, when demurred to, and the demurrer is sustained, is no more a valid declaration to put the defendant to answer, than a writ when quashed would be to affect him with notice; and yet, because a demurrer should be sustained to a declaration, no one would contend that no suit had been commenced, because the declaration was adjudged defective." ·

To the same effect was the previous decision in the case of the *State Bank vs. Sherrill*, 6 *Eng. Rep.* 336, where the court refused to adopt a rule contended for, of "requiring valid and perfect proceedings" in the previous suit, in order for the removal of the bar. And these two cases were followed in the case of

544 · CASES IN THE SUPREME COURT

Biscoe et al. vs. Madden as ad. [JANUARY]

the *State Bank vs. Steen et al.*, 13 *Ark.* 36. And they all seem fully authorized and sustained by the obvious meaning, and, indeed, by almost the very letter, of the statute.

The enactment is, that: " If any action shall be commenced within the times respectively prescribed in this act, and the plaintiff therein suffers a non-suit, or after a verdict for him the judgment be arrested, or after judgment for him the same be reversed on appeal or writ of error, such plaintiff may commence a new action from time to time within one year after such non-suit suffered, or judgment arrested or reversed." *Digest, chap.* 99, *page* 699, *sec.* 24.

It is plain enough, that if the plaintiff's judgment should be reversed or arrested, he will have the privilege to bring the new action without any regard to whether the court decided right or wrong in arresting or reversing it; and all that he would have to show to maintain this privilege would be, that he had a verdict in his favor, on which a judgment was arrested, or a judgment which had been reversed. Whether the arrest or the reversal had been properly or improperly adjudged, would be no concern of his. His privilege in no manner depended upon that.

Is it not plain that these reversals and arrests contemplate erroneous proceedings? If so, is it not almost absolutely certain, that, as to the non-suits in like manner provided for in the same connection, it was contemplated that like erroneous proceedings might superinduce them? That conclusion seems almost inevitable. If so, why should any irregularity be regarded in the former suit, if, in fact, there was one, when set up to prevent the bar? No irregularity in the arrest or reversal is to be regarded, if, in fact, there was a verdict or a judgment, whether erroneous or not; and by parity of reason, the same rule should apply to the suit and non-suit. That is the view taken of like statutory provisions in Massachusetts. *Coffin vs. Cottle*, 16 *Pick. Rep.* 383. And the same doctrine is maintained in Pennsylvania, in the case of *Donnings vs. Lindsey*, 2 *Barr Rep.* 382, where it is held, that the commencement of a suit, which was abated for

non-joinder of certain persons as defendants, who were joined in the new suit, has the effect to defeat the statute bar.

Although none of these cases come peremptorily up, as cases, to the precise point that we have to decide, they all inculcate doctrines which carry us to the conclusion, that it ought not to be held for the appellee. To hold otherwise, we should have to hold that erroneous suits were no suits at all. The claimants were certainly parties plaintiff in all the suits, and in all of them the recovery of this identical debt was sought, and always for the use of the same beneficiaries, as was distinctly disclosed in all the suits.

It is our opinion, therefore, that the Circuit Court erred in affirming the judgment of the Probate Court ; and should have reversed it and proceeded to render judgment for the claimants in form as on *non obstante veredicto*, as the Probate Court should have done upon the oral allegations and upon the proof, irrespective of the immaterial issue that was joined and found. It being manifest from the face of the record, that the claim was not barred by the statute of non-claim, and as it appears therefrom that the intestate was in life on the 12th of September, 1848, and that this claim was presented to his administrator, on the 17th of August, 1849, it is manifest that it was so presented within the first year after the grant of letters upon his estate.

The judgment will, therefore, be reversed, and remanded to the Pope Circuit Court, with instructions to reverse the judgment of the Probate Court, give such judgment as that court ought to have given, and certify the same into that court according to law.