## HILL EX. VS. THE STATE.

As upon the death of a trustee he ceases to be such, and as to him the trust is no longer continued, his indebtedness to the trust becomes a demand against his estate, to be authenticated, allowed, classed and paid out of the assets of his estate, as other demands.

The statute of non-claim is a bar to the claims of the State, if not exhibited within the time prescribed by the statute, as in the case of private individuals.

*Appeal from Pulaski Chancery Court.*

Hon. H. F. FAIRCHILD, Chancellor.

WATKINS & GALLAGHER, for appellant.

HEMPSTEAD, for appellee.

Mr. Chief Justice ENGLISH, delivered the opinion of the court.

This case, like *The State vs. Shall, ad.,* and *Biscoe vs. The State, ante,* is a branch of the suit of the State against the Trustees, etc., of the Real Estate Bank.

George Hill was one of the original Trustees under the deed of assignment; and was also one of the residuary Trustees, and continued to act as such until the time of his death, in January, 1849.

Having made a will, letters testamentary were granted to his widow, Nancy Hill, by the probate court of Hempstead county, 31st of March, 1849; and as his executrix she was made defendant to the bill filed by the State against the Trustees, etc., 1st of May, 1854.

In her answer, she pleaded the statute of non-claim, limitation, etc., and before, and at the time of the final hearing, she moved to be discharged upon these defences, but the court overruled the motions, and rendered a decree against her, as the representative of her deceased husband, for the sums mentioned below, and she appealed.

Hill was indebted to the bank, on stock notes and accommodation notes, before, and at the time of the deed of assignment; he made payments during his lifetime, and like Biscoe (see *Biscoe vs. State, ante,*) was credited with a salary of $750 per annum for his services as Trustee, instead of the *per diem* compensation provided for by the deed. At the time of his death, there was still a balance against him upon the books of the bank, as his account was stated by the cashier and secretary of the board of Trustees, which Mrs. Hill, as his executrix, subsequently fully paid off.

Upon a re-statement of his account, by a special master, under the directions of the chancellor, as in *Biscoe's case,* his estate was reported to be indebted to the trust in the sum of

$3,091 24, in money, and $1,837 87, in Arkansas bank paper or bonds, for which a decree was rendered against appellant, as executrix. A decree was also given against her for the sum of $2,365, in money, reported by another special. master to whom the matter was referred, as being Hill's portion of the value of the Ferguson negroes, which were lost to the trust, the chancellor held, by the negligence of the Trustees.

It appears that Wm. D. Ferguson had made a mortgage to the bank upon lands and negroes, to secure debts due from him to the bank; the mortgage had been foreclosed, the property sold and purchased by the Trustees. On the 28th May, 1847, the Board of Trustees, (present, Biscoe, Hill, Faulkner and Walters,) made an order, upon application of Ferguson, that when he paid or secured $5,500 00, the value fixed upon the slaves, they would reconvey them to him. In the meantime the slaves were to remain in his possession, to be employed, fed, clothed, etc., by him, on condition that he did not remove them from the State. It seems that no further step was taken, by the Trustees, about the matter during their continuance in office. That Ferguson failed to secure or pay the value of the slaves, and that some time or other, whether before or after the death of Hill does not appear, ran them off to Tennessee, and they were lost to the trust.

It was agreed by the parties that there had been no authentication and presentation of the demands against Hill's estate, to his executrix, as required by the administration laws; and that if the statute of non-claim was applicable to this suit, the appellant should have been discharged.

The bill sought to recover against Hill's estate mere money demands. Upon his death, whatever trust property there may have been in his possession, passed, it must be supposed, in the absence of any showing to the contrary, into the hands of his survivors and successors in office. The decree against his executrix was for money demands, one of them arising upon a re-statement of his book account, and the other upon a valuation of trust property, supposed to have been lost to the trust, by the negligence of himself and his co-trustees, in leaving it

in the possession of Ferguson without security. These demands, if just claims against his estate at all, as we must suppose they were, existed at the time of his death, and were as capable of being asserted in a sworn bill brought within two years after the grant of letters testamentary to his executrix, as they were five years after by the bill then filed in this case.

In *Walker as ad. vs. Byers*, 14 *Ark.* 252, the court, by Mr. Justice SCOTT, said: "In this system, [meaning our administration system, upon which he was commenting,] two capital objects seem plainly in view from the various provisions for their attainment; *first*, that the estate of every deceased person, after death, shall immediately pass to the custody of the law, to be administered for the benefit of creditors, and after the satisfaction of all claims against it, that shall be presented within two years after the grant of letters testamentary, or administration; the residue shall in the next place be passed to the heir or distributee, quit of all claims against it which the law will allow of, as against an executor or administrator."

And after remarking upon the jurisdiction of the probate court, and its mode of dealing with estates, the Judge continues thus: "In such a system, with a tribunal thus constituted, as its effective instrument, we think it clear that the claims and demands which the statute contemplates shall be exhibited to the executor or administrator in the manner provided by the statute, before the end of two years from the granting of letters, on pain of being forever barred, *are all claims capable of being asserted in any court of justice, either of law or equity*, existing at the time of the death of the deceased, or coming into existence at any time after the death, and before the expiration of two years—including, of course, all claims, or demands, running to certain maturity, although not yet payable, to be adjusted presently, upon equitable principles of discount, according to the rate of interest when matured, or to be provided for at the day of maturity without discount, and excluding such claims only as might be inchoate and contingent, like that in the case of *Burton vs. Lockhart*, (4 *Eng. R.* 412,) and like dor-

mant warranties, broken by eviction after the expiration of the two years."

"In excluding such possible claims, (continues the Judge,) indicated in the latter class, the statute does not destroy them, only as against any administrator, or executor, and in preferring to them all claims that exist at the death, or come into existence at any time before the expiration of the two years, and therefore leaves them to be asserted against the heir or distributee, as such, as a *superior equity to his*, in the assets that may have descended, or been distributed to him after the estate of a deceased person has been administered for all the purposes contemplated by law. Whereas, every species of claim or demand, either legal or *equitable*, which comes within the scope of the administration, as we have defined, will be forever barred, as well against the heir or distributee, as the executor or administrator, if not *exhibited* in the manner provided by the statute, by the end of two years."

."From this exposition of our administration system, etc., etc., etc., it results that where one dies and leaves an estate, every claim or demand against it, for which it is liable, when in the course of administration, in whatever manner asserted, must be authenticated by the affidavit of the claimant, as provided by the statute, because in no other way can a claim be exhibited in accordance with the statute, to prevent it being forever barred."

After noticing some exceptions to the rule as thus stated, which are unlike the case now before us, and showing that the statute of non-claim, and not the general statute of limitations is applicable to demands against the estates of deceased persons, the Judge says: "In the light of these views, then, it is clear that the decree in this case cannot be sustained upon the cross-bill of Byers, because there is no pretence either that the cross-bill was sworn to, or that it was filed, until long after the expiration of two years from the grant of letters of administration to Walker."

The principles announced in this opinion have been repeat-

edly applied and confirmed in subsequent cases, and may be regarded as settled.  See *Bennett et al. vs. Dawson*, 18 *Ark.* 336; *Oswalt vs. Moore*, 19 *Ark.* 225; *State Bank vs. Walker ad.* 14 *Ark.* 236; *Bennett et al. vs. Dawson et al.*, 15 *Ark.* 413; *Biscoe et al. vs. Madden as ad.*, 17 *Ark.* 533.

It is insisted for the State, that the statute of non-claim does not apply in this case, *first*, because Hill was a trustee, and that the trust was direct and continuing; and, *second*, that the statute of non-claim, like the general statute of limitations, does not run against the State.

In regard to the *first* objection, it may be remarked that it is true that Hill was a direct trustee, under the deed of assignment, and that it was, what is denominated in the books, a continuing trust.   But upon his death, he ceased to be a trustee, and, as to him, the trust no longer  continued (*Halliburton ad. vs. Fletcher ad. et al.*, 22 *Ark.* 653).   His indebtedness to the trust became a demand against his estate, to be authenticated, allowed, classed and paid out of the assets which came into the hands of his executrix, as other demands, unless the State, having an interest in the trust, was privileged to file a bill at any time to enforce the payment of the demand, by the executrix, regardless of the provisions of the administration statute prescribing the mode of authenticating, and limiting the time for presenting claims against executors and administrators; and this brings us to the consideration of the second and more *difficult objection:*

Does the statute of non-claim apply to the State?

It may be remarked, that the demand against Hill's estate, on account of his indebtedness to the trust, was not one directly due to the State, or payable into her treasury.  She is, however, deeply interested in the effects appertaining to the trust. To enable the Real Estate Bank, a private corporation, to raise a banking capital, the State issued her bonds to the bank, on the faith of mortgages made by the stockholders, upon lands, to secure the payment of the bonds, etc.; the bonds were endorsed by the bank, put into the market and sold.  After-

wards, the bank being in failing circumstances, made the deed of assignment to Trustees for the benefit of its creditors, etc. The bill, in this case, was filed by the State, on behalf of herself and other creditors, to compel the Trustees, and the executors and administrators of such of them as were deceased, to account, etc. Any stockholder, bondholder, or other creditor of the bank, or person interested in the trust, had the same right to file the bill that the State had, and a bill to compel the executrix of Hill to account, and pay over money due from him to the trust, might have been filed within two years from the grant of letters to her, as well as after the expiration of five years; which time had elapsed when the present bill was filed.

If this suit had been brought by any other creditor of the bank than the State, we think it clear that it would have been barred by the statute of non-claim, so far as the demand against the executrix of Hill is concerned. Why then should the State be permitted to come in, out of time, and compel the executrix to pay a demand lost to all other creditors by their negligence and delay? The answer for the State is, that the statute of non-claim does not apply to her—that time does not run against the State.

It is true that it is an old maxim of the English law, that no time runs against the crown, or, as it is expressed by the early law writers, *nullum tempus occurrit regi.* *Broom's Legal Maxims* 46; 11 *Coke* 68, 74. And the rule founded upon it is, that the king is not bound by any statute of limitations unless there be an express provision to that effect. *Sedgwick on Stat., etc.,* 105. The reason sometimes assigned why no laches shall be imputed to the king, is, that he is continually busied for the public good, and has not leisure to assert his right within the period limited to subjects. *Coke Lit.* 90; 1 *Black.* 247. A better reason is, the great public policy of preserving public rights and property from damage and loss through the negligence of public officers. *United States vs. Hoar,* 2 *Mason* 311; *The People vs. Gilbert,* 18 *John.* 227; 9 *Wheat.* 720, 735; *Levasser vs. Washburn,* 11 *Grat.* 576; *Angel on Lim.* 35. And it has been

said that the reason is equally, if not more, cogent in a representative government, where the power of the people is delegated to others, and must be exercised by these if exercised at all; and accordingly the principle is held to have been transferred to the sovereign people of this country, when they succeeded to the rights of the king of Great Britain, and formed independent governments within the respective States. *Levasser vs. Washburn,* 11 *Grat.* 577; *Kennedy's Ex. vs. Townley's Heirs,* 16 *Ala.* 247; *Commonwealth vs. Baldwin,* 1 *Watts* 54; *State vs. Thompson, use, etc.,* 5 *Eng. R.* 67; *McNamee vs. United States,* 6 *Eng.* 148.

And though this is sometimes called a prerogative right, it is in fact nothing more than a reservation, or exception, introduced for the public benefit, and equally applicable to all governments. *United States vs. Hoar,* 2 *Mason* 314.

" But, independently of any doctrine founded on the notion of prerogative, (says Judge STORY in the case last cited,) the same construction of statutes of this sort ought to prevail, founded upon the legislative intention. Where the government is not expressly, or by necessary implication included, it ought to be clear from the nature of the mischiefs to be redressed, or the language used, that the government itself was in contemplation of the Legislature, before a court of law would be authorized to put such an interpretation upon any statute. In general, acts of the Legislature are meant to regulate and direct the acts and rights of citizens; and, in most cases, the reasoning applicable to them applies with very different, and often contrary force to the government. It appears to me, therefore, to be a safe rule, founded in the principles of the common law, that the general words of a statute ought not to include the government, or affect its rights, unless that construction be clear and indisputable upon the text of the act."

Conceding it to be well established that the general statute of limitations does not run against the State, we will apply the rule for the construction of statutes as stated by Judge STORY, to the statute of non-claim, and other provisions of our admini-

stration acts, to be taken in connnection with it, and see whether demands due to the State are not, by clear and necessary implication, embraced.

The language of the statute is broad and comprehensive. It declares that " *all demands*, not exhibited to the executor or administrator, as required by this act, before the end of two years from the granting of letters, shall be *forever barred*." *Dig.*, *chap*. 4, *sec*. 98. It embraces, as we have above shown, equitable as well as legal demands. Claims due to *corporations*, to artificial as well as natural persons, are expressly included. (*Sec*. 104.) No exceptions are made in favor of married women, infants, persons insane, imprisoned, or beyond seas. (1 *Eng. R.* 14.) The demands of all, alike, are forever barred, as against the executor or administrator, if not brought forward within the time limited by the act. The general statute of limitations applies to the remedy only, and the debt, after it is barred, may be revived by a new promise, part payment, etc., but the statute of non-claim applies to the right, and when the claim is barred by it, it is forever barred. No promise of the executor or administrator, made in any form, can revive the claim. It is not within their power to allow a demand after the expiration of the two years. The *policy* of the statute forbids it. The statute need not be pleaded, but the executor or administrator may insist on the bar, at any time before final judgment. 14 *Ark*. 240.

Upon the death of a person, his entire estate (subject to dower and specific liens, etc. 14 *Ark*. 246; 18 *Ib*. 414; 22 *Ib*. 535), becomes assets in the hands of his executor or administrator, first, for the payment of all demands brought forward, in the manner prescribed by the statute, within two years from the grant of letters, and then the remainder, if any, to be turned over to the legatees or distributees; who are kept waiting, without even an allowance for maintenance, until the expiration of the two years, unless the Probate Court, upon refunding bonds executed by them, shall sooner order distribution, etc. (*Secs*. 149, 150). And to avoid unnecessary delay

in the payment of debts brought in and classed within the period of limitation, as well as to prevent executors and administrators from unnecessarily keeping back the remainder of the estate from legatees and distributees, the statute declares that every " executor or administrator shall make final settlement of his administration within three years from the date of his letters," etc. (*Sec.* 204.) And though, in many instances, it may be impracticable for executors and administrators to make final settlement within three years, yet this section is in harmony with the other provisions of the statute, and constitutes an important feature in the administration system contemplated by it.

Looking at all of the provisions of the statute together, and considering the policy manifestly contemplated by it, we think the conclusion is unavoidable, that demands due the State, or in which she is interested, as in this case, are, by clear and necessary implication, embraced by the statute, and, like other demands, barred if not brought forward within the period of limitation fixed by the act.

If the State, through the negligence of her officers, may hold back her demand for more than two years from the grant of letters, and then bring it forward, and compel the executor or administrator to allow and pay it, she may not only delay to present it for five years, as in the case before us, but the delay may extend to any number of years. In the meantime, how is the executor or administrator to pay the demands presented and allowed in time; to pay legacies and distributive shares out of the assets remaining; and make a final settlement of the estate within three years from the grant of letters, as required by the statute? A construction of the statute that would admit a demand due the State after the expiration of the period of limitation, would be at war with the manifest policy of the statute, and hinder, delay and disturb the due course of administration.

In the general statute of limitations, from considerations of public policy, there is an implied reservation in favor of the

State (where she is not named), as there are express exceptions in favor of women laboring under the legal disability of coverture, infants and insane persons, who are supposed to be incapable of attending to their interests, etc., and there are good reasons why these reservations should be made.

But the administration statute, contemplating, as we have seen, a speedy settlement of all demands, and a distribution of the remainder of the estate to legatees and distributees, within a prescribed time after grant of letters, in fixing the period in which demands are to be presented, has, consistently with the policy of the act, made no reservation in favor of married women, infants, insane persons, etc., and the courts can make none. The policy of the statute is, that the course of administration and distribution shall not be prolonged and confused by the coming in of claims out of time; and there is no good reason why the policy which excludes demands due to the helpless persons above mentioned, if not presented within the time prescribed by the statute, should not also bar the claims of the State exhibited for allowance out of time.

In Mississippi, where the statute limiting the time for exhibiting demands against the estates of deceased persons, is treated as a mere statute of limitations, (5 *S. & M.* 651; 7 *Ib.* 441), it has been held that the statute does not run against the State. *Parmilee vs. McNutt, Gov., etc.,* 4 1 *S. & M.* 183.

So in *United States vs. Hoar,* 2 *Mason* 311, Judge Story appears to have treated the statute of Massachusett, limiting suits against executors and administrators, as of the nature of the general statute of limitations, and applied the old English maxim, *nullum tempus occurrit regi,* etc.

But in *The State vs. Crutcher ad.,* 2 *Swan* 504, in a well considered case by Mr. Justice McKinney, the distinction between the general statute of limitations and the statute of non-claim of Tennessee, is pointed out, and it is held, upon a construction of that statute, and other statutes construed in connection with it, that demands due the State are barred by the statute of non-claim, if not presented within the time limited, etc.

Our conclusion is, that the decree against Mrs. Hill must be reversed, and a decree entered here, and certified to the court below, discharging her from the suit.

Mr. Justice FAIRCHILD did not sit in this case.