## WALKER & WIFE ET AL. VS. PEAY, REC'R.

As ruled in *Trapnoll adm'x vs. Byrd et al.*, (21 *Ark.*) a record referred to in the pleadings and proving itself, may be read at the hearing.

A court of chancery has jurisdiction to remove clouds from the title to real estate (19 *Ark.* 139.)

*Section* 27, *ch.* 106, *Title Limitation* (*Gould's Dig.*) should be construed liberally; and so a voluntary dismissing of a suit commenced within the statute bar, if a new suit be commenced within the year, is as effectual to avoid the operation of the statute as if the plaintiff had suffered a formal non-suit; and it makes no difference that the first suit was at law, and the second in chancery, nor that the former was not dismissed until after the commencement of the latter.

The thirty-five sections under the head of Limitation in the Revised Statutes, are to be construed as one act, and actions barred by the thirty-fifth section are subject to the provisions of the twenty-first.

### *Appeal from Pulaski Chancery Court.*

Hon. HULBERT F. FAIRCHILD, Chancellor.

FOWLER and STILLWELL, for the appellants.

The statute of limitations, to which Walker and wife are entitled, is that of five years to a purchaser at a judicial sale; and there was not only a claim of title but an actual possession continued more than five years after the sale, and before the *filing of the bill.*

And, even were it true that the provision under the head of Limitation (*Dig. p.* 699, *sec.* 24,) providing that "if any action shall be commenced within the times respectively prescribed in this act, and the plaintiff therein suffer a *non suit,*" &c., "such plaintiff may commence a new action within one year after such *non suit,* was applicable to this case, here there was no *non suit, no renewal within one year after,* nor any step done or suffered which could bring this case within that provision. *Alexander vs. Pendleton,* 3 *Cond. Rep.* 269; *Nevitt vs. Bacon,* 32 *Miss. Rep.* 228.

But the five years limitation was approved March 3, 1838, and contained no provision in favor of a person who might take a non suit and renew within one year thereafter. The general statute which was approved March 5th, 1838, and put in force March 20th, 1839, contained the provision and it is expressly restricted to suits "commenced within the times respectively prescribed *in this Act.*" (*Gould's Dig. p.* 753, *sec.* 27.) The exception then, being by its terms restricted to such

OF THE STATE OF ARKANSAS. **105**

Term, 1860]          Walker & Wife et al. vs. Peay, Rec'r.

times and cases as are mentioned in the act of the 5th of March, cannot be extended to the act of 3d of March: for it is well set- tled that no exception to a statute of limitations can be claimed either at law or equity, unless it be expressly mentioned in such statute, or in a supplementary statute expressly declaring such exception. *Bucklin vs. Ford*, 5 *Barb. S. C. Rep.* 395; 13 *S. & Mar.* 329; 3 *John. Ch. R.* 142; 16 *Ark.* 649; 17 *Ib.* 201.

The complainants having an unquestionable remedy at law, the bill ought to be dismissed for want of jurisdiction. The appellants having insisted upon the question of jurisdiction in their answers and at the hearing, are entitled to it here. 19 *How.* 277; 16 *Ala.* 427; 11 *Ark.* 423; 14 *Ib.* 342, 354.

Hempstead, for the appellee.

The answer sets up that no suit was brought within five years after the sale to Fowler, and that the complainant is therefore barred from all relief.

If the sale under the execution be valid, the action of eject- ment was brought against Fowler, the purchaser, within five years; namely on the 9th of October, 1848; and it was contin- ued by the chancery suit which was commenced in 1851. In fact the ejectment suit was not dismissed until 1852, as shown by record testimony. Suit then was brought within the period of limitation, and it has been continuously prosecuted, without intermission, either at law or in chancery, to the present time from the year 1848. *Dig.* 696; *Biscoe vs. Madden*, 17 *Ark.* 541. 544.

The bringing of suit will always stop the statute of limita- tions. *Angell* 333. For whatever may be the nature of it, it shows that the party does not intend, and has not in fact, for- borne during the time limited. And, if he has not, the statute cannot apply.

Where a plaintiff is driven to a non-suit at law, by the decision of the court that he has mistaken his form of remedy, and he commences proceedings in chancery within one year from the non-suit, no presumption of payment or settlement

will be raised against him, or laches imputed to him, and the case is out of the statute. *Spear vs. Newell*, 13 *Verm.* 288.

In this case there was no gap in the proceedings, but continual claim, either by the suit at law or in equity; and so the case is not subject to the special statute of limitations set np. *Baker vs. Baker*, 13 *B. Mon.* 406. The object of it was to bar persons who slept upon their rights and made no claim. No such reason applies here; and this case falls within the spirit of the exception in reference to a second suit, after the discontinuance of a 'previous one. And it makes no difference whether the second suit was brought at law or in equity. It would be absurd to attempt to apply limitation when, within the time, a valid suit was instituted to recover the lands, and this suit was commenced for the same purpose, before that was dismissed; thus showing a continual assertion of our rights.

An objection was made to the introduction of the record of the ejectment suit. But, as no particulars were given, we suppose this court will not notice a general objection.

We cannot see on what ground it should have been excluded. It was the exemplified copy of a record in another court, which proved itself; and needed no extrinsic proof whatever. 2 *Daniel's Ch. Pr.* 1005; 1 *Greenl. Ev.* 503. It was a suit between the same parties or privies, and relating to the same subject matter, and referred to in the pleadings.

Of the jurisdiction of courts of equity to quiet titles, to remove clouds from titles, and to have titles canceled, and to prevent multiplicity of suits, there can be no question. 2 *Story's Eq.* 853, 826, 700; 1 *Johns. Ch. R.* 520.

Hon. HARRIS FLANAGIN, Special Judge, delivered the opinion of the Court.

The trustees of the Real Estate Bank, on the sixth day of August, 1851, filed their bill in chancery, in which they charge: That on the fourth day of August, 1837, William Cummins executed a mortgage as a stockholder in the Real Estate Bank, in the usual form, on the north fractional half of section 33, and

the south west fractional quarter of section 28, in township two north of range twelve west, which was acknowledged and recorded October twenty-third, A. D. 1839. Cummins died April 7th, 1843.

In December, 1843, the trustees, who had become possessed of the assets of the Bank, brought their bill to foreclose for money borrowed by Cummins, and a decree was had. On the 20th day of May, 1846, a sale was had under the decree, at which the trustees bought the land. On the 14th day of September, 1839, David Walker, by Absalom Fowler, his attorney, recovered a judgment against William Cummins, which was a lien on the land. A fi. fa. was issued, and was levied on the seventh day of June, 1841, on the "fractional south west quarter of section 33, and the south west fractional quarter south west quarter of section twenty-eight," and was suspended from sale for one year, under the law, because they did not bring two-thirds of their appraised value.

Before the expiration of twelve months, an alias fi. fa. was issued, and was returned by Fowler with a credit endorsed thereon.

On the third day of August, 1842, another fi. fa. was issued and levied on other lands which were appraised and offered for sale, and not sold because they would not bring two-thirds of their appraised value.

On the third day of November, 1844, a ven. ex. was issued commanding the sale of the property levied on June 7th 1841; a sale was had and Milton Fowler bought them, and on the 23d day of April, 1845, received a deed from the sheriff for the lands described in the levy, i. e., the fractional north west quarter of section 33, and the fractional south west quarter of the south west quarter of section 28, in township two north, in range 12 west.

The judgment against Cummins was not revived against him in his life time, or against his heirs or administrators after his death.

Milton Fowler had possession from shortly after the sale until

108       CASES IN THE SUPREME COURT

Walker & Wife et al. vs. Peay, Rec'r..       [OCTOBER

his death in January, 1849, when Absalom Fowler administered and took possession.

An action of ejectment was instituted for the lands and was suspended by the death of the defendant and the plaintiffs George Hill and Ebenezer Walters.

Prayer for rents and that the complainants' title may be quieted and have possession.

The case was ordered to progress in the name of Peay, as receiver.

The answer of Fowler and of Walker and wife denied that the irregular executions were issued by the direction of the plaintiff—pleads the five years limitation—avers that the suit was voluntarily dismissed by plaintiff—denies the jurisdiction—and says Milton Fowler was an innocent purchaser without notice. The answer was filed February, 12th 1857.

The parties made an agreement whereby the exhibits were to be read without further proof. That William Cummins died April 7th, 1843. That Milton Fowler had possession from his purchase until his death. That his heirs and administrators had possession up to February 22nd, 1853, and that Green Walker and wife had possession from that time until now.

The annual rents were worth $50.

A transcript of the ejectment suit was read in evidence, whereby it appeared that complainants and George Hill and Ebenezer Walters brought ejectment on the ninth day of October, 1848, for the land in controversy—a scire facias to revive in the name of the surviving plaintiffs against Milton Fowler's representatives was issued September, 10th 1850—a plea filed by the representatives of Milton Fowler, December 14th, 1850—plaintiff took a non suit.

There was a decree for the complainants, and the defendants brought this case here by appeal.

The first error assigned is, that the record in the ejectment was received in the case as testimony.

It was ruled in *Trapnall's adm'x vs. Byrd et al.*, decided at

this term, that a record referred to in the pleadings and proving itself could be read at the hearing.

The second point urged by appellants is, that the complainants had a remedy at law, and that the court had no jurisdiction.

It has been held in this court as well as by most other chancery courts that a court of equity has jurisdiction to remove clouds from the title to real estate. *Shell et al. vs. Martin*, 19 *Ark.* 139.

It is insisted that the dismissing of the action of ejectment is not equivalent to suffering a non suit: that a suit at law will not save the limitation in a chancery proceeding and that this was instituted whilst the other action was pending.

The act of Virginia provides that on a reversal or arrest of a judgment for the plaintiff, a new action may be commenced in one year. In *Brown's Executors vs. Putney*, 1 *Washington R.* 390, the court held that a suit that went out of court by abatement was within the act, and if another was brought within one year, it was sufficient.

The British statute is, in substance, the same as in Virginia, and there are numerous authorities that a suit abated by death is within an equitable construction.

In *Coffin vs. Cottle*, 16 *Pick.* 683, the court held: "This is a remedial statute, both in its enacting and qualifying clauses, and should have such construction as will best carry into effect the intent of the legislature. The statute is founded on the presumption, that if a creditor has permitted his debt to remain a certain length of time without an attempt to enforce it, or to revive and perpetuate the evidence of it, it is paid or otherwise discharged. This presumption arising out of the nature of the fact itself, for the convenience of having a certain and practical rule, is limited to a certain fixed time, and after such time made a positive bar by the force of the statute. But this presumption does not arise if the creditor resorts to legal diligence to recover his debt within the time limited."

This court decided, *State Bank vs. Magness*, 6 *Eng.* 344, that

a judgment by dismissal was sufficient to sustain a plea of action within the limitation and non suit: and the court say, "it is the apparent intention of the framers of the act, to secure that class of suitors from loss who, from causes incident to the administration of the law, are compelled to abandon their present action, whether by their own act or the act of the court, where either would leave them a cause of action yet undetermined, by giving them a reasonable time within which to renew such action.

The remedy was intended to be co-extensive with the evil, and will be so held unless some sensible reason to the contrary shall be shown. This cause was dismissed by the court for want of a bond for cost.

In *Biscoe et al. vs. Madden as ad.*, 17 *Eng.* 533, it is held that where a former suit is an erroneous proceeding on account of error in formal parties, if brought for the same beneficiaries on the same cause of action, it is sufficient.

We have no difficulty in holding that *section twenty-seven in Gould's Digest*, under the head of Limitation, is to have a liberal construction, in order to save the rights intended to be preserved, and that a voluntary dismissing of a suit is as effectual as a formal non suit, and that it makes no difference that the first suit is at law, and that the second is in chancery. The plaintiff took no steps in the ejectment suit, except to dismiss it, after the commencement of the chancery suit, and as he might have then dismissed his suit, and commenced anew within one year in chancery, it can be no objection that one then commenced should progress.

Again, it is objected that *section* 21, *page* 530, *Revised Statutes*, which prescribes where a plaintiff shall commence an action within the time prescribed in said act, and shall suffer a non suit, he may bring another action within one year, does not apply to a plea under section 35, for the reason that section 35 was approved March 3rd, 1838, while the remainder of the general act of limitation was approved on the 5th day of March, 1838.

On *page* 697, *Revised Statutes*, it is provided that: " For the purpose of construction the Revised Statutes passed at the present General Assembly, shall be deemed to have been passed on the same day, notwithstanding they may have been passed at different times, but if any provisions of different statutes are repugnant to each other, that which shall have been last passed shall prevail, and so much of any provisions as may be inconsistent with such last provisions shall be deemed repealed thereby."

Under the above enactment all the statute provisions under the head of limitations become one law or act by virtue of the proclamation of the Governor, in the year 1839, and are to be construed together when they do not conflict. There is nothing in these enactments, which prevents them from standing together.

The thirty-fifth section fixes a limitation upon actions for property held by virtue of judicial and tax sales, and contains its own exceptions, which do not save the rights of married women, as held in *Pearce et al. vs. Elliott et al.*, 20 *Ark.* 508. The first five sections contain the general limitations as to real estate, with savings or exceptions, while the sections from five to twelve inclusive fix the limitation to personal actions, to which are added the exceptions in the thirteenth section. Each act of limitations has its own exceptions while all are affected by the general provisions which were intended to regulate the practice on this subject.

While fully recognizing the rule that a limitation law is not affected by exceptions not included in the act, on this point we hold that, for the purpose of costruction, the thirty-five sections under the head of limitations in the Revised Statutes, are to be construed as one act, and actions barred by the thirty-fifth section are subject to the provisions of the twenty-first.

Let the decree be affirmed.

Mr. Justice FAIRCHILD did not sit in this case.