ALEXANDER et al. v. GORDON et al.

(Circuit Court of Appeals, Eighth Circuit. March 21, 1900.)

No. 1,254.

1. EJECTMENT—EVIDENCE—ARKANSAS STATUTE.
The statute of Arkansas (Sand. & H. Dig. 1894, §§ 2578–2580) requiring each party in an action of ejectment to file with his pleading copies of all deeds or other written instruments of title on which he relies, and providing that the adverse party shall by his pleading except to any of such documentary evidence to which he may wish to object, which exceptions shall be passed on by the court, and that all objections not so taken shall be waived, prescribes a statutory rule of evidence, which will be enforced by the federal courts in the state; and a party who, after filing exceptions to a deed or other document set out by his adversary, withdraws the same, waives any right to object to such document on the trial.

2. LIMITATION—EXTENSION BY PRIOR SUIT—IDENTITY OF SUITS.

Under Sand. & H. Dig. Ark. 1894, § 4841, which provides that when an action is commenced within the time limited by the statute of limitations, in which the plaintiff suffers a nonsuit, etc., he may commence a new action within one year thereafter, the record in an equity suit to recover possession of land, which was dismissed without prejudice, is admissible to avoid the bar of limitation in an action of ejectment for the same land commenced within a year thereafter by the same plaintiffs, claiming in the same right, and against the successors in interest of the former defendant.

3. TAX SALE—SUIT TO RECOVER PROPERTY SOLD—SPECIAL STATUTORY LIMITATION.

Sand. & H. Dig. Ark. 1894, § 4819, which provides that no action for the recovery of lands sold for taxes, or for possession thereof, shall be maintained unless it appears that the plaintiff or his predecessor in title was seised or possessed of such lands within two years next preceding the commencement of such action, while it may be given effect to protect the title of a tax purchaser from attack on account of mere irregularities in the proceedings upon which it rests, cannot operate to deprive an owner of his lands, or the right to recover possession thereof, because they have for two years been in possession of a purchaser at a tax sale, which appears on the face of the proceedings to be void, because the officer who made it, by reason of the failure to record with the county clerk the list of lands and notice of sale, which is made by the statute a condition precedent to the power of sale, was without jurisdiction or authority to effect such sale, and because it was made for taxes levied in excess of the limit prescribed by law. Such construction would make it an arbitrary enactment depriving an owner of his property without due process of law.

4. LIMITATIONS—SPECIAL STATUTE—RECOVERY OF PROPERTY SOLD AT JUDICIAL SALE.

Sand. & H. Dig. Ark. 1894, § 4818, providing that all actions against the purchaser, his heirs or assigns, for the recovery of lands sold at judicial sales, shall be brought within five years after the date of such sale, and not thereafter, cannot be invoked to sustain the title to land acquired under a judicial sale in a partition suit between strangers to the true title, as against the real owner, who was not a party to such suit.

5. SAME—POSSESSION.

Under such statute the possession of the premises is not an element in the limitation prescribed, which runs from the date of the sale, regardless of possession.

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

On April 22, 1896, the defendants in error, John T. Gordon, Hattie Gordon Ralston, Malcomb Musgrave, and Julia M. Sargent, brought an action of ejectment against William N. Young for the possession of the W. ½ of section 11, township 2 S., of range 9 W., in Lonoke county, in the state of Arkansas. They alleged in their complaint that this land was granted by the United States to the state of Arkansas, and by the state of Arkansas to Theron Brownfield; that Brownfield sold the land to James G. Gordon on April 24, 1854, and conveyed it by his deed on February 7, 1857, to the legal heirs of said Gordon; that the plaintiffs were his legal heirs; that he had died before said deed was made, and by his last will and testament had devised all his property to the plaintiffs; that on July 7, 1891, they commenced a suit on the equity side of the court against Young's grantor to quiet their title, and to procure possession of the land here in controversy; and that on the 11th day of February, 1896, such suit was dismissed without prejudice to the maintenance of another action. They also allege that defendant Young was in the unlawful possession of the premises. They attached as exhibits to their complaint copies of the grants of the land from the state of Arkansas to Brownfield, of the deed from Brownfield to the executor and heirs of James

G. Gordon, and of the will, and the probate of the will, of Gordon. The defendant Young answered that the plaintiffs were not owners of the land; that his (the defendant's) possession was lawful; that in March, 1868, one W. J. Rogers bought the land in the name of his brother P. V. Rogers for the taxes of 1867, and obtained a certificate of purchase, which was lost, and that for this reason no deed for the tax sale was executed; that Rogers conveyed the land to one Doughtry; that Doughtry conveyed it to England; that England and Rogers conveyed to M. P. S. Boyd, as administrator of the estate of Emily Rogers; that in a certain suit in partition pending in the Lonoke circuit court, in which M. P. S. Boyd and others were plaintiffs and James Blanton and others were defendants, on the 11th day of January, 1883, it was decreed that said lands should be sold; that at the sale under the decree W. F. Jackson purchased the lands on December 12, 1883, and received a commissioner's deed therefor; that Jackson mortgaged the land to the defendant Young, who foreclosed the mortgage in due form. The defendant attached to his answer copies of the record of the tax sale of this land to Rogers in 1868, referred to in his complaint; of the deed from Rogers to Doughtry; of the deed from Doughtry to England; of the deed of England and Rogers to Boyd, as administrator; of the decree in partition, which disclosed the fact that neither the plaintiffs nor any of their grantors were parties to that decree, or to the suit in which it was rendered; of the commissioner's deed to Jackson; and of the decree and deed of the commissioner to Young upon the foreclosure of the Jackson mortgage. On September 20, 1897, the defendants in error filed a petition which alleged that since the making of the answer the defendant Young had died intestate; that Charles N. Alexander had been appointed administrator of his estate; that his surviving heirs were his minor children, Maggie Young, Futhey Young, Roger Young, Leta Young, Harold Young, and Ruth Young; that Charles N. Alexander was their legal guardian, —and prayed that the suit might be revived against the administrator and against the minor children and their guardian. An order of revivor was made, and thereafter the plaintiff in error Charles N. Alexander, as administrator of the estate of W. N. Young, deceased, appeared in this suit, and answered that he was the administrator, and was in possession of the lands in controversy; that the answer of the decedent was true; and that he adopted the same. He then proceeded to allege in detail the various proceedings from the assessment to the sale upon which the tax sale of 1868 to Rogers was based, and alleged that he, as the administrator, held the lands, and that the heirs of Young owned them in fee under said tax sale and the mesne conveyances set out in the answer of their decedent. For a further answer, he pleaded that those under whom he and the heirs of Young claimed the property had paid the taxes thereon from 1868 to 1898, inclusive, and that they had made improvements upon the premises of the value of $9,500. He also alleged that he was the legal guardian of the minor heirs of the decedent, Young, and that as such guardian he entered his appearance, and, for his wards, adopted the answer of the decedent as amended by his answer. D. E. Bradshaw, one of the attorneys for the plaintiffs in error, was appointed attorney ad litem for the minor heirs, and filed a report in the court below, in which he alleged that he had seen personally one of the minors, and had addressed letters to the others, informing them of the nature and pendency of the suit, and had consulted with Charles N. Alexander, and was informed and believed that Alexander had put in a defense for the minor children. Upon these pleadings the case was tried to a jury, and the result was a verdict and judgment that the defendants in error should recover the possession of the land, and that the plaintiffs in error should recover the sum of $3,500 for the improvements on the land, the taxes paid thereon, and the interest on the amount so paid, and for the costs incident to this recovery. The administrator and the heirs of Young sued out a writ of error to reverse this judgment. The alleged errors which they assign are considered in the opinion.

Sam W. Williams and D. E. Bradshaw, for plaintiffs in error.

P. C. Dooley and Jacob Trieber, for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

1. The first two errors assigned are that the court received in evidence the deed of Theron Brownfield to the executor and heirs of James G. Gordon, deceased, dated on February 7, 1857, a copy of which was attached to the complaint, and that it received in evidence a copy of the will of James G. Gordon, deceased, and of its probate, which was a duplicate of one of the exhibits attached to the complaint. These specifications of error are untenable under the statutes of Arkansas relative to pleadings and evidence in actions of ejectment. Those statutes provide that the plaintiff shall set forth in his complaint all deeds and other written evidences of title on which he relies, and shall file copies of the same as exhibits therewith, and that the defendant shall plead in the same manner. They require the defendant in his answer to set forth exceptions to any of said documentary evidence relied on by the plaintiff to which he may wish to object, and they impose the same duty upon the plaintiff regarding the documentary evidence disclosed by the defendant. They provide that all such exceptions shall be passed on by the court, and shall be sustained or overruled as the law may require, and they expressly declare that "all objections to such evidences not specifically pointed out in the manner provided shall be waived." Sand. & H. Dig. Ark. 1894, §§ 2578–2580. The original defendant, Young, filed an exception to the deed of Brownfield, but not to the will or its probate. Before the trial, however, the plaintiffs in error withdrew all their exceptions to the documentary evidence of the plaintiff, and in this state of the record the case proceeded to trial. The purpose of the statutory provisions to which we have referred is to prevent surprise, and to enable parties to correct immaterial defects in their evidences of title before they enter upon the trial. The object is a worthy one, and the provisions to attain it are wise and salutary, and should be enforced. The plaintiffs in error waived all objections to the receipt in evidence of the deed and the will by their withdrawal of their exceptions to them before the trial, and their specifications of error in that regard are futile.

2. The next complaint is that the court received in evidence the record of the suit in chancery between James G. Gordon and W. F. Jackson to settle the title to the land in controversy, and place the possession of it in Gordon, which was commenced on the 7th of July, 1891, and was dismissed on the 15th day of February, 1896, over the objection of the plaintiffs in error that it was not a possessory action, and did not stop the statute of limitations from running. Defendants in error claimed the title and the possession of the property under the complainant in that suit, and the plaintiffs in error claimed them under the defendant in that suit. One of the provisions of the statutes of limitations of the state of Arkansas is:

"If any action shall be commenced within the time respectively prescribed in this act and the plaintiff therein suffer a nonsuit, or after a verdict for him the judgment be arrested, or after judgment for him the same be reversed on appeal or writ of error, such plaintiff may commence a new action within one year after such nonsuit suffered or judgment arrested or reversed.

\* \* \* And if the cause of such action survive to his heirs or survive to his executors or administrators they may in like manner commence a new action or take out a mandate within the time allowed such plaintiff." Sand. & H. Dig. Ark. 1894, § 4841.

The record of the suit in equity was introduced in evidence by the defendants in error, under this section of the statutes, to avoid the bar of limitation; and no argument can make it clearer that it had that effect than does the statement of the facts and of the law which has already been made. The suit in equity was between parties claiming in the same right as the parties to this action. It was, among other things, for the recovery of the possession of the same land. By the plain terms of the statute, it prevented the bar of limitation when these defendants in error commenced their new action within a year from its dismissal. Bank v. Magness, 11 Ark. 344; Biscoe v. Madden, 17 Ark. 533; Walker v. Peay, 22 Ark. 103; Railway Co. v. Mances, 49 Ark. 246, 4 S. W. 778; Smith v. McNeal, 109 U. S. 426, 3 Sup. Ct. 319, 27 L. Ed. 986; Glenn v. Liggett, 135 U. S. 533, 10 Sup. Ct. 867, 34 L. Ed. 262.

3. It is insisted that the court erred because it refused to hold that the defendants in error were barred from the maintenance of this suit by the fact that they were not seised or possessed of the lands within two years next before the commencement of the suit in equity, on July 7, 1891. This contention is based upon the fact that the evidence tended to show that the plaintiffs in error and their ancestor Young, under whom they claimed, were in the actual and notorious possession of this land from January, 1887, until this suit was brought, and that the statutes of Arkansas provide:

"No action for the recovery of any lands or for the possession thereof against any person or persons, their heirs or assigns, who may hold such lands by virtue of a purchase thereof at a sale by the collector or commissioner of state lands for the non-payment of taxes, or who may have purchased the same from the state by virtue of any act providing for the sale of lands forfeited to the state for the non-payment of taxes, or who may hold such lands under a donation deed from the state, shall be maintained unless it appear that the plaintiff, his ancestor, predecessor or grantor was seized or possessed of the lands in question within two years next before the commencement of such suit or action." Sand. & H. Dig. Ark. 1894, § 4819.

The plaintiffs in error were in possession of this land, and were holding it by virtue of the sale of 1868 for the nonpayment of taxes, for more than two years before the suit of 1891 was commenced. They therefore fall within the literal terms of the statute of limitations which has been quoted. An examination of the proceedings which resulted in the tax sale, however, discloses the facts that no deed had ever been issued upon the sale; that the sale itself was not only irregular, but void, because it was made for the collection of a tax in excess of the amount which the county court was authorized by the statutes to levy, and because the officer who made the sale was without jurisdiction or authority to effect it. The levy of a higher rate of taxes than that allowed by law vitiates the sale. Worthen v. Badgett, 32 Ark. 496; Cope v. Collins, 37 Ark. 649; Parr v. Matthews, 50 Ark. 390, 8 S. W. 22. Section 117, c. 148, Gould's Dig. Ark. 1858, under which this sale was made, provides:

"The collector shall before the day of the sale mentioned in said notice cause to be recorded, in the office of the clerk of the county court in a book to be by him provided and kept for that purpose such list and notice [the list of property proposed to be sold and the notice of the sale] and such clerk shall make the record from the list and notice published in the newspaper and shall certify at the foot of the record the name of said newspaper and the length of time such list and notice was published before the day of sale, which record shall be evidence of the facts therein stated."

No such record was made before the day of sale. The statute made the record of this notice a condition precedent to the vesting of the power in the collector to effect the sale. Without a compliance with this condition, he had neither power nor jurisdiction to sell this land. The pretended sale which he made was therefore made without authority, and was void. Martin v. Barbour (C. C.) 34 Fed. 701, 705, 707; Id., 140 U. S. 634, 646, 647, 11 Sup. Ct. 944, 35 L. Ed. 546.

The real question here is, therefore, whether or not one who holds the possession of land for two years, under a sale which is clearly void upon the face of the proceedings which evidence it, may thereby deprive the owner of the land of his title to it, under this statute, without a trial, hearing, or notice. Our attention has been called to a dictum of the supreme court of Arkansas, found in Woolfork v. Buckner, 60 Ark. 163, 167, 29 S. W. 372, which declares that this is the effect of the two-years statute of limitation under consideration. This declaration was, however, unnecessary to the determination of the questions presented in that case, and it seems to be contrary to sound principles of jurisprudence and of construction. The constitution of the United States and the constitution of the state of Arkansas contain the basic principle of English jurisprudence,—that no person shall be deprived of his life, liberty, or property without due process of law. Const. U. S. Amend. art. 14; Const. Ark. art. 2, § 21. Chancellor Kent says, "The better and larger definition of 'due process of law' is that it means law in its regular administration through courts of justice." 2 Kent, Comm. 13. While it is difficult and unwise to undertake to accurately define the term, it is certain that "due process" must be a course of legal proceedings according to those rules and forms which have been established for the protection of private rights. It must be one that is appropriate to the case, and just to the party affected. It must give to the parties affected an opportunity to be heard respecting the justice of the disposition of the property whose title it seeks to devest. It is plain that the mere fiat of a legislature that the property of A. shall become the property of B. falls within the ban of the constitutional provision. It is undoubtedly competent for the legislative department to enact reasonable statutes of limitation, to provide that the adverse possession of lands for a reasonable time under a tax or judicial sale shall cure the mere irregularities in the proceedings upon which it rests. But a provision that the possession of land for the limited term of two years under a purchase at a tax sale which clearly appeared upon its face to be void because the officer who made it had no jurisdiction or authority to effect it, and because it was made for taxes levied in excess of the limit prescribed by the law, is not process of law, but is a mere legislative fiat, and in violation of the funda-

mental principle of our jurisprudence. If this was the purpose and intent of the legislature of Arkansas in the passage of this act of limitation, the law could not be sustained. It may, and perhaps does, have a more limited operation. It may serve the purpose; after the tax purchaser has had possession of the property for two years under a sale made by an officer having jurisdiction and authority to make it for the collection of taxes legally levied, to bar the former owner from recovering his property on account of mere irregularities in the proceedings upon which the sale is based. This is the effect given to this statute by the supreme court of the United States in the case of Redfield v. Parks, 132 U. S. 239, 241–252, 10 Sup. Ct. 83, 33 L. Ed. 327. It is the effect given to a somewhat similar statute, limiting to two years an attack upon a tax sale, by the supreme court of Arkansas in Radcliffe v. Scruggs, 46 Ark. 96, 106. That court there approved the principle upon which we rest the decision in this case. It said:

"Neither the validity nor the construction of this statute has been settled by previous decisions of this court, further than that it does not operate to deprive the former owner of any meritorious defense. And by 'meritorious defense' we mean any act or omission of the revenue officers in violation of the law, and prejudicial to his rights or interests, as well as those jurisdictional and fundamental defects which affect the power to levy the tax, or to sell for its nonpayment. But, while the act cannot have the free course that its framers intended, it is still our duty to give it such effect as may be consistent with legal and constitutional principles. And this may be best accomplished by restricting the operation to mere irregularities or informalities on the part of the officers having some duty to perform in relation to the assessment, levy of taxes, or sale. Our legislation and previous decisions have always distinguished between this class of defects, which have no tendency to injuriously affect the taxpayer, and substantial defects, such as go to the jurisdiction of the levying court to levy a particular tax, or to the power of the officer to sell for nonpayment, or the omission of any legal duty which is calculated to prejudice the landowner."

Our conclusion is that two years of possession of land by a purchaser at a tax sale which appears on the face of the proceedings to be void, because the officer who made the sale had no jurisdiction or authority to effect it, and because the levy of the tax for which it was made was contrary to law, does not deprive the owner of his title to the land, or of his right to recover possession of it, under section 4819, Sand. & H. Dig. Ark. 1894.

4. Another contention of counsel for plaintiffs in error is that this judgment should be reversed because neither this suit, nor the suit in equity which was commenced on July 7, 1891, was brought within five years after the judicial sale in the partition suit, which was made on December 12, 1883. This position is based upon the following section of the statutes of Arkansas:

"All actions against the purchaser, his heirs or assigns, for the recovery of lands sold at judicial sales shall be brought within five years after the date of such sale, and not thereafter; saving to minors and persons of unsound mind the period of three years after such disability shall have been removed." Sand. & H. Dig. Ark. 1894, § 4818.

But neither the defendants in error, nor any of those under whom they claim, were parties to the partition suit under which this sale was made. That suit was brought by parties claiming under the tax

101 F.—7

sale against other parties claiming under the same sale, for the purpose of determining their rights against each other under that supposed title. No question of title to the property was involved or could have been tried in that suit. No notice of the suit was given to any of the real owners of the land. May the legislature of a state provide that strangers to the title to land may institute and maintain a suit between themselves, and obtain a judicial sale of the property without notice to the real owners, and thereby, or by the lapse of time thereafter, without adverse possession or notice to the owners, devest their title? The question is susceptible of but one answer. Such an act would fall under the ban of the constitutional provision which has been already considered. It would give to the parties whose title was to be devested no opportunity to be heard respecting the judgment recovered, or the effect of the proceedings had. It would be a proceeding which condemns without hearing, proceeds without inquiry, and renders judgment without trial. It would not be due process of law. If the purpose of this statute was to devest the title of the owner of land in this way, it is unconstitutional and void. It is not probable that the legislature intended to work such an injustice. The true interpretation of the statute probably is that those who claim under the parties whose rights were heard and adjudicated in a given suit may not attack the title of the purchaser under a judicial sale in that proceeding five years after the date of the sale. Such a construction avoids the constitutional difficulty, because the persons thus barred stand in privity with the parties to the suit, and have had constructive notice of, and an opportunity for a hearing and a decision of, their claims. Any broader construction renders the statute ineffectual. Laws of this character have frequently been enacted by the legislatures of the various states. They generally limit attacks upon judicial sales made in proceedings in the nature of proceedings in rem, such as guardians' sales, administrators' sales, sales in proceedings to collect taxes, and other sales of this nature, in which jurisdictional notices run against all the world, or all the persons interested in the property or in the estates. But the rule is, even in these cases, that special statutes of limitations have no application to cases in which the notices required to be given are so insufficient in themselves, or so defectively served, that no jurisdiction to take the proceedings against the parties interested is conferred. Thus, in Pursley v. Hayes, 22 Iowa, 11, 25, which was an attack by a ward upon a guardian's sale protected by this statute: "No person can question the validity of such sale after the lapse of five years from the time it was made,"—it was held that where one without semblance of authority acted as a guardian in making the sale, or one who was lawfully appointed guardian made the sale without any notice to the ward or pretense thereof, the purchaser could not use the statute to protect him in his title. In Boyles v. Boyles, 37 Iowa, 592, the heir of a deceased person attacked an administrator's sale more than five years after it was made, and the purchaser sought to sustain it under this statute: "No action for the recovery of real estate sold by an executor can be sustained by any person claiming under the deceased unless brought

within five years next after the sale." But the sale had been made without the notice required by law, and the court held that the statute had no application to cases where there was no valid sale on account of the want of the jurisdictional notice; citing Good v. Norley, 28 Iowa, 188. To the same effect is Rankin v. Miller, 43 Iowa, 11, 21. In the state of Minnesota the collection of taxes against real estate is enforced by means of the entry of a judgment in the court of general jurisdiction upon a publication of a list of the real estate, and of notice of the time and place when the application for judgment will be made. After this tax judgment is rendered, a sale of the property is made under a proper notice. The statute then provides: "The judgment and sale herein provided for shall not be set aside unless the action in which the validity of the judgment or sale shall be called into question, or the defense to any action alleging its validity, be brought within nine months of the date of said sale." Numerous cases have arisen in which the published list and notice of application for judgment failed to properly describe the real estate in controversy, and the purchaser has endeavored to sustain his title under this statute. The supreme court of Minnesota has uniformly held that it was not within the power of the legislature to declare that a mere claim of title on paper should ripen into good title as against the lawful owner of the property, and that the effect of this statute must be restricted to cases in which the jurisdictional notice was sufficient in itself and properly served. Feller v. Clark, 36 Minn. 338, 340, 31 N. W. 175; Kipp v. Fernhold, 37 Minn. 132, 134, 33 N. W. 697; Baker v. Kelley, 11 Minn. 480 (Gil. 358, 371); Smith v. Kipp, 49 Minn. 119, 125, 51 N. W. 656. If these special statutes of limitations are insufficient to sustain the title of purchasers in proceedings of this nature unless the jurisdictional notices are given to the parties interested, much less can a statute be sustained which undertakes to enable strangers to the title to land to devest it from the owner by a judicial sale in a suit between themselves without any notice to the owner of the property, or any adverse possession. It will be noticed that this statute is not in any proper sense a statute of limitation. It does not operate as the foundation of title to property in possession. By its terms it gives to the purchaser at a judicial sale in a proceeding to which the owner is not a party the absolute title to the owner's property five years thereafter although the owner may during all this time be in possession of the property, or it may be vacant and unoccupied, so that he could not maintain an action for its possession. The five years run regardless of the possession from the time of the sale. Mitchell v. Etter, 22 Ark. 178, 181, 183; Keatts v. Fowler's Devisees, Id. 483, 485, 487. The statute does not take away certain forms of remedy and leave the property right of the parties unaffected. It devests the property of the owner and vests it in the purchaser at the judicial sale five years after it is made regardless of possession and regardless of notice to the owner. It was not within the power of the legislature to produce such a result by the mere enactment of a statute. The conclusion is that section 4818, Sand. & H. Dig. Ark. 1894, cannot be invoked to sustain the title to land under a judicial sale against strangers to the judicial proceeding in which the sale was made.

5. It is assigned as error that the court below refused to instruct the jury that if the plaintiffs in error, and those under whom they claimed, had held possession of the lands under the judicial sale of 1883 for a period of five years next before July 7, 1891, they were entitled to the possession of the lands. There was no error in the refusal. Possession of the premises is not an element in the five-years limitation prescribed by the section of the statute we have been considering. The time under that statute runs from the date of the sale, regardless of possession.

6. Section 4815, Sand. & H. Dig. Ark. 1894, provides, in effect, that no person shall maintain any action at law for any lands, except within seven years next after his cause of action has accrued; and several errors are assigned relative to the charge of the court in reference to this provision of law. The evidence is, however, conclusive that there never was any possession by the plaintiffs in error, or those under whom they claim, prior to the year 1887; and this statute of limitations ceased to run on July 7, 1891, when the suit in equity for the recovery of these lands was brought by the ancestor of the defendants in error. This statute therefore had no application to the case, and there was no error in the charge of the court concerning it.

7. After the court had charged the jury, and they had retired to consider the verdict, they returned to the court room. An objection is made that the court then told them, with reference to the suit, "that there was a question of the statute of limitations at one time in it, but it was conceded not to be in it at its present status." This does not appear to be a correct statement of the claims of the parties to the suit. There is nothing in the record to show that the plaintiffs in error ever conceded that any of the statutes of limitations were not in the case. It is clear, however, from the evidence, that the plaintiffs in error could not maintain their right to the possession of the property under any of these statutes. The statement of the court was therefore error without prejudice, and no ground for reversal.

The objections to this judgment which have now been considered dispose of all of the specifications of error contained in the record. There is an extended argument in the brief of the plaintiffs in error in support of the view that this judgment should be reversed because no proper notice of the application to revive it was served upon the minor plaintiffs in error. No such objection was made in the court below. One of the attorneys for the plaintiffs in error acted as the guardian ad litem for the minors, and, if they were never properly in the case, the possession of the property was in the administrator, Alexander, and the judgment for recovery of possession against him is right, and should be affirmed. If counsel for plaintiffs in error, upon further consideration, are of the opinion that they do not represent the plaintiffs in error who are minors, and that they ought not to recover or receive any part of the $3,500 which was awarded to their clients by the judgment in this case, they can undoubtedly find some means of escape from receiving it. The judgment is affirmed.