UNION CENT. LIFE INS. CO. et al. v. SKIPPER.

(Circuit Court of Appeals, Eighth Circuit. March 17, 1902.)

No. 1,565.

1. LIFE INSURANCE—ACTION ON POLICY—QUESTIONS FOR JURY.
    Where both parties, without objection, called witnesses to express their opinions as experts, based on the facts shown, upon the question whether an insured committed suicide or was murdered, which opinions were conflicting, such testimony necessarily required the submission of the issue to the jury, and its finding thereon is conclusive.

2. SAME—BOND TO SECURE PAYMENT OF LOSSES—ARKANSAS STATUTE.
    The statute of Arkansas (Sand. & H. Dig. § 4124) requires all fire, life, and accident insurance companies doing business in the state to give a bond to the state, to be renewed annually, "conditioned for the prompt payment of all claims arising and accruing to any person during the term of said bond by virtue of any policy issued by any such company." Held, that the words "arising" and "accruing," as used in such statute, mean the same thing; the one being explanatory of the other, and the intent being to say that the obligors in such bonds shall be liable to pay all losses that "arise or accrue" by reason of a loss, death, or injury which occurs during the term of the bond; and the fact that the loss did not become payable, under the terms of a life policy, until after the term of the bond in force when the death occurred had expired, did not relieve the obligors from such liability.

3. SAME—ACTION ON STATUTORY BOND—LIMITATION.
    A provision of a life insurance policy that "no suit to recover under this policy shall be brought after one year from the death of the insured" applies only to an action on the policy itself, and cannot be extended to limit the time within which an action must be brought on a bond which the state, in the exercise of its undoubted powers, has required the company to give to secure the payment of claims under its policies as a condition to its doing business in the state, but an action on such bond is governed by the general statute of limitations of the state.

4. SAME—LIMITATION OF ACTION ON POLICY—ARKANSAS STATUTE.
    Under the statute of Arkansas (Sand. & H. Dig. § 4144) providing that, in all actions against insurance companies on policies, "if the plaintiff shall suffer a nonsuit, * * * such plaintiff may commence a new action from time to time within one year after nonsuit, * * * and no stipulation contained in any policy of insurance shall avail to deprive

the plaintiff in such action of any of the benefits of this section," giving it a liberal construction in harmony with that given another similar statute by the supreme court of the state, a plaintiff who commenced two successive suits on a life insurance policy, and who suffered a nonsuit or dismissal in each case for reasons not conclusive of the merits, may commence a new action within one year after the termination of the last, notwithstanding any limitation clause in the policy.

**5.** TRIAL—INSTRUCTIONS.

An instruction that circumstantial evidence, "if complete," may be as conclusive and convincing as direct or positive evidence of eyewitnesses, is not so far erroneous or misleading, as against the party relying upon such evidence, as to warrant a reversal of the judgment.

**6.** SAME — REFUSAL OF REQUESTS — CAUTIONING JURY AGAINST NEWSPAPER PUBLICATION.

A trial judge is not required, on request of a party, to call attention in his charge to a newspaper article published during the trial, and containing statements calculated to influence the jury, and to caution the jury to disregard the same, unless advised in some authentic manner that the article had been seen or read by some member of the jury, but in the absence of such showing he may properly, in his discretion, reserve the question for future determination on a motion for new trial.

**7.** APPEAL—REVIEW—HARMLESS ERROR.

The exclusion of a question asked of a witness on cross-examination, if erroneous, is error without prejudice, where the party asking the question was afterwards permitted to examine the witness fully as to the facts to which the question had reference.

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

This case comes on a writ of error from the circuit court of the United States for the Eastern district of Arkansas. The laws of that state provide (Sand. & H. Dig. Ark. § 4124) that all fire, life, and accident insurance companies doing business in the state shall annually give a bond to the state, with sureties to be approved by the auditor of the state, in the sum of $20,000, "conditioned for the prompt payment of all claims arising and accruing to any person during the term of said bond, by virtue of any policy issued by any such company, * * * upon the life or person of any citizen of the state or upon any property situated in this state, and such bond shall be annually renewed." On June 3, 1895, the Union Central Life Insurance Company, the plaintiff in error, an Ohio corporation, executed a bond, under the provisions of this statute, with a view of doing business within the state of Arkansas, which bond was duly filed and approved in the proper office. On August 23, 1895, William F. Skipper took out two policies of insurance on his life in the Union Central Life Insurance Company, each in the sum of $5,000, which by their terms were payable to Malissa F. Skipper, the wife of said William F. Skipper, the defendant in error, which policies, by their terms, were payable within 60 days after the death of the insured, and proof made thereof to the insurer. On May 13, 1896, during the period covered by the aforesaid bond, William F. Skipper was either murdered or committed suicide in Drew county, Ark., where he resided. On August 20, 1898, the present action was instituted in Drew county, Ark. The declaration thus filed counted upon the aforesaid bond which had been executed by the defendant company on June 3, 1895, and alleged, as a breach of the condition of said bond, that the company had failed to pay the claims arising and accruing under the aforesaid policies. The case was removed to the federal circuit court for the Eastern district of Arkansas, where a trial took place, which resulted in a verdict against the defendant company. It seems that, before the present action was instituted on the bond, two other actions had been commenced against the defendant company to recover on the policies, one of which was commenced on December 2, 1896, and dismissed on February 19, 1897, and the other of which actions was begun on February 20, 1897, and was dis-

missed on August 16, 1898, four days before the present action was instituted.

J. W. House and Lawrence Maxwell, Jr., for plaintiffs in error.

W. S. McCain (Farrar L. McCain, U. M. Rose, W. E. Hemingway, and G. B. Rose, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The principal issue of fact which was litigated in the lower court was whether William F. Skipper was murdered or committed suicide; it being conceded that, by the terms of the policy, there could be no recovery if he died by his own hand. This issue of fact was submitted to the jury, who decided it adversely to the contention of the defendant company, finding that the deceased was murdered. In this court an elaborate brief has been filed with a view of showing that the case should have been withdrawn from the jury on the ground, among others, that, when the evidence is fully considered, but one conclusion can be drawn therefrom, and that is that the deceased committed suicide. The record shows, however, that by consent, or at least without objection on either side, both parties called witnesses and asked them to express their opinions, as experts, whether, in view of all the circumstances surrounding the death of the deceased and the finding of his remains, he took his own life or was murdered. Opinions were expressed both ways on this question by witnesses for the respective parties, and the issue was decided by the jury on the strength of such testimony, for which reason it cannot be successfully contended here that the verdict is unsupported by the evidence. In making this statement, we would not be understood as admitting that, but for the expert testimony, there would have been no evidence tending to show that the deceased was murdered. We express no opinion on that point. It is sufficient to say that upon this record the issue whether death was occasioned by suicide was necessarily submitted to the jury, and the finding upon that issue by the jury is conclusive.

It is argued that the case should have been taken from the jury for the further reason that the claim sued upon is not within the terms of the bond on which the action is based. The bond employs the language of the statute, which is quoted above in the statement, and bound the obligors to pay "claims arising and accruing" during the year commencing June 3, 1895, and ending June 3, 1896. It is said that as Skipper died on May 13, 1896, and the loss was not payable until proof of his death was submitted, and as such proofs were not submitted until after June 3, 1896, the loss did not both arise and accrue within the lifetime of the bond, and the obligors are not liable. We think that this proposition is not tenable. If the words "arising and accruing," as used in this bond, are construed as meaning something different,—for example, if the word "arising" means when death occurs, and the word "accruing" means when the loss, by the terms of the policy, becomes payable,—and if it be true that a loss must both arise and accrue within the lifetime of the bond, to render

the obligors therein liable, then it is obvious that it would often happen that losses would occur under policies which would not be within the terms of any bond, because they would not both arise and accrue while it was in force. This would happen as respects all losses which occur during the last 60 days before bonds expire, as nearly all policies of insurance contain provisions giving the insurer 60 days within which to pay losses after proofs have been furnished. The legislature cannot be presumed to have intended such a result, and this is a sufficient reason for rejecting the construction contended for, and seeking for some other which is more reasonable and more in harmony with the presumed intention of the lawmaker. We may either assume that the word "and" is used in the statute, as it frequently is, in a disjunctive sense, and that the legislature intended to make the obligors in such bonds as the one sued upon liable for any loss where either the death occurs, or the loss becomes payable, by the terms of the policy, during the lifetime of the bond. Or we may assume that the words "arising and accruing" mean the same thing; one word being used as explanatory of the other; the intent being to say that the obligors in such bonds shall be liable to pay all losses that "arise or accrue" by reason of deaths which occur during the period covered by the bond. We incline to the opinion that the latter is the correct interpretation of the statute, and that the time when a death occurs fixes the liability on this class of bonds. We cannot assent to the view that these words refer to different events,—the one to the death of the insured, and the other to the time the loss is payable by the terms of the policy,—and that both of these events must occur during the life of a bond, to render the obligors therein liable. The lawmaker, in our judgment, had no such purpose in view when the statute was framed.

It is also argued that the case should have been taken from the jury because the policies which were issued on the life of Skipper contain this provision, "No suit to recover under this policy shall be brought after one year from the death of the insured." As the present action was brought on August 20, 1898, and as Skipper died on May 13, 1896, it is urged that the action is barred by the aforesaid provision found in the policies; and in support of this proposition our attention is particularly directed to the decision in Riddlesbarger v. Insurance Co., 7 Wall. 386, 19 L. Ed. 257, and other kindred cases, wherein the validity of such provisions, limiting the right to sue on policies of insurance, have been upheld. This agreement between the parties as to the time within which suits should be brought relates, in our opinion, to actions on the policies, and to such actions only. The phrase "no suit to recover under this policy" means the same, in our judgment, as "no suit to recover on this policy." The parties were contracting with reference to actions on the policies themselves, and not with reference to actions which might be brought on an independent obligation like the bond in suit, which the state, in the exercise of an undoubted power to determine on what conditions it would permit foreign insurance companies to engage in business within the state (Paul v. Virginia, 8 Wall. 182, 19 L. Ed. 357; Insurance Co. v. Daggs, 172 U. S. 557, 19 Sup. Ct.

281, 43 L. Ed. 552), saw fit to exact from foreign insurance companies doing business in the state, to compel them to promptly settle losses which might become due at any time to citizens of the state. When the state, in the exercise of such a power, compelled the defendant company, as a condition precedent to engaging in business in the state, to give a bond to the state, conditioned that it would promptly pay such losses as it might sustain within the state, it did not limit the time within which parties entitled to sue on the bond so executed should bring their actions, but left that matter to be regulated by the general statutes of limitations then in force applicable to such instruments. The bond in suit is a writing under seal, and, by virtue of the statutes of the state, actions on such instruments may be brought within five years after the cause of action accrues. Sand. & H. Dig. Ark. § 4828. The suit at bar is obviously an action on the bond for a breach thereof, and the reference made to the policies is only made to them as instruments of evidence for the purpose of showing that a breach of the bond has occurred. Association v. Farmer, 23 C. C. A. 574, 77 Fed. 929, 931. Under these circumstances, we are of opinion that the agreement contained in the policies limiting the right to sue thereon to one year cannot be so extended as to embrace an action on the bond which the defendant company was compelled to give to the state, and with respect to which kind of instruments the legislature has prescribed the time within which suits thereon may be brought. It was the province of the state to determine within what time an action might be brought on a bond given to itself as obligee, and it has so determined.

But if it should be conceded that the views last expressed are unsound, and if a scope should be given to the provision in the policies that would make it embrace an action on the bond as well as on the policies, the contention of the defendant company that the present action is barred would have to be overruled for another reason: In the year 1893 an act was passed in the state of Arkansas (Sand. & H. Dig. Ark. § 4144) which declares that:

"In all actions against insurance companies upon policies of insurance issued by them, if the plaintiff shall suffer a non-suit or if after a verdict for him, the judgment shall be arrested, or if after judgment for him the same shall be reversed on appeal or writ of error, such plaintiff may commence a new action from time to time within one year after non-suit suffered or judgment arrested or reversed; and no stipulation contained in any policy of insurance shall avail to deprive the plaintiff in such action of any of the benefits of this section, but the same shall apply to the limitation of the time of suing stipulated for in the policy of insurance."

The obvious purpose of this statute was to avoid the effect of provisions in policies of insurance fixing a short time within which suits must be brought to enforce the collection of sums claimed to be due thereunder, that had become quite common after the decision in Riddlesbarger v. Insurance Co., 7 Wall. 386, 19 L. Ed. 257, since the concluding clause of the statute is very emphatic; declaring, in substance, that no such stipulation shall avail to deprive a plaintiff of any of the benefits intended to be conferred by the statute. The legislature manifestly intended to save the right

of one claiming under a policy of insurance, if, after having brought an action, and for any reason suffered a nonsuit or dismissal, which was not conclusive of the merits of the controversy, he brought another action within a year. The supreme court of the state of Arkansas has invariably construed another statute of that state, of the same character as the one quoted above, which has been in force in that state for many years, with great liberality, with a view of effectuating its true purpose, and saving a right of action when by misadventure a plaintiff is compelled to dismiss an action once brought, or take a nonsuit. Under the former statute of that state, which provided, in substance, that, if a plaintiff suffer a nonsuit, he may renew his action within a year, it was held that the statute applied, and saved the right to sue again, although the record showed that the former action had been dismissed by the court without a final determination of the merits of the controversy; the court refusing to place a narrow or technical construction on the word "nonsuit," which was the only term employed in the statute. Bank v. Magness, 11 Ark. 343, 346. The same statute was also held to apply, and save the right of the plaintiff to sue again, although the first suit was brought by different plaintiffs, who could not maintain the action, and had therefore suffered a nonsuit. Biscoe v. Madden, 17 Ark. 533, 542. It has also been held that the statute applies although the first action is brought in a court which has no jurisdiction of the controversy, and for that reason fails. Railway Co. v. Manees, 49 Ark. 248, 4 S. W. 778, 4 Am. St. Rep. 45. The statute also applies, and saves the right to sue, even when the first suit is at law and the second is in chancery, and the former action was not dismissed until after the second action had been commenced. Walker v. Peay, 22 Ark. 103. See, also, James v. Biscoe, 10 Ark. 184; Bank v. Sherril, 11 Ark. 334; Bank v. Roddy, 12 Ark. 766; Crow v. State, 23 Ark. 684.

Although the act of 1893, above quoted, only applies to insurance companies, and has never been construed by the supreme court of the state, yet, as it is a statute of the same kind as the one to which the foregoing decisions relate, and was inspired by the same purpose, we entertain no doubt, after an examination of the course of decision under the earlier statute, that it would be held by the courts of the state that the act of 1893, in any event, saved the right of the plaintiff below to maintain the present action, inasmuch as it was commenced within four days after the second action on the policies was dismissed, and that action on the very next day after the first action was abandoned, so that the litigation to enforce the claim has been practically continuous. In view of repeated declarations by the supreme court of the state that a statute of that nature should be liberally construed, so as to save a right of action on a demand, provided the right of recovery thereon has not been adjudicated on the merits, we are fully persuaded that the act of 1893 would be held to save the present action, and avoid the provision in the policies on which the defendant company relies, and against which the statute of 1893 was aimed, inasmuch as all of the suits were brought and prosecuted for the purpose of enforcing substantially the same demand.

Turning to other errors that have been assigned, we observe that the instructions given by the lower court are criticised because in one place, while commenting on the weight to be given to circumstantial evidence, the trial judge remarked:

"Circumstantial evidence, if complete, may be as conclusive and convincing as direct or positive evidence of eyewitnesses. When it is strong and satisfactory, the jury should consider it fairly, neither enlarging nor belittling its force."

What the court meant, evidently, and must be understood as having said, was that, if the chain of circumstances relied upon to establish the defense of suicide was unbroken, it would be as conclusive and convincing as positive or direct evidence. Circumstantial evidence is often referred to by the courts as a chain of circumstances which, to have the greatest probative force, must be complete or unbroken, in the sense that each fact or circumstance relied upon must be consistent with all others, and that all must point in the same direction, and lead to the same conclusion. This, we have no doubt, was what the court meant when it remarked that such evidence, "if complete," is as conclusive as direct evidence. The instruction in question was not so far erroneous or misleading as to warrant a reversal of the judgment.

Another error complained of arose out of the following facts: While the case was on trial at the city of Little Rock, Ark., and four or five days before a verdict was rendered, a daily newspaper published in that city gave an account of an interview with a nephew of the deceased. The article was sensational in its character, and entitled:

"Noted Skipper Case—Insurance Phase Now on Trial in the United States Court—History of the Case Reviewed—Two Negroes were Lynched for Murdering Skipper—Insurance Company Claims Suicide."

Among other things, the article contained a statement that W. F. Skipper was foully murdered by James Redd, Alex. Johnson, Sam Lusk, and John Bradford, near his mill. When the case was finally submitted to the jury, the court was asked to instruct the jury, in substance, that the court's attention had been called to this article, and that, if any one of the jurors had read it, they should not regard it, or any statement contained in the article, in making up their verdict, or be influenced thereby in any way whatever. The trial judge declined to so advise the jury, and, in its charge, made no allusion whatever to the article in question. After the verdict had been rendered, the publication of this newspaper article was made one of the grounds of a motion for a new trial; and upon the hearing of this motion an affidavit was submitted, which was signed and sworn to by 11 of the jurors, wherein they stated that they did not read the article in question until after the rendition of the verdict, nor did they hear any discussion of the facts stated therein until after the verdict was rendered. The lower court, after hearing arguments upon the motion for a new trial, and the affidavits that were produced in support of the motion and in opposition thereto, overruled it.

It goes without saying that the action of the lower court in overruling the motion for a new trial is not subject to review by this court; and, as the newspaper article in question formed no part of the testimony which was offered during the progress of the trial, the only question that this court can consider is whether the trial judge should have taken judicial notice of the publication, and assumed that the jurors, or some of them, had read it, and, on that assumption, should have instructed the jurors to disregard it. We are of opinion that no obligation rested upon the trial judge to take notice of this publication in his charge, unless he was advised in some authentic manner that the article in question had been seen and read by the jurors, or some of them. If they were ignorant of its publication and of the contents of the article, as they each afterwards testified that they were, any allusion to the subject by the court in its charge would doubtless have done more harm than good. It is not claimed that the court was advised that the article had been seen and read by any of the jurors; and, in view of that fact, we conclude that it committed no error in reserving for future determination, on a motion for a new trial, where the matter could be carefully investigated, the question whether the contents of the article were known to the jurors, or any of them, and had prejudicially affected the verdict. The action of the lower court on the instruction in question, under the circumstances above stated, should be regarded, in any event, as largely discretionary, since it was much better acquainted with the environment than this court can be. We may remark, however, that the trial judge should have set the verdict aside if he had any reasonable ground to believe that the verdict had been influenced by the publication.

In conclusion, we only deem it necessary to notice specially one of the exceptions to the exclusion of testimony which were taken at the trial by the defendant company. On the cross-examination by counsel for the defendant company of a witness for the plaintiff below, who appears to have been one of the men who served on the coroner's jury which investigated the cause of Skipper's death immediately after his dead body was found, the witness was asked this question: If it was not a fact that on a former occasion, when he was testifying in the case, he had not stated, in substance, that at the conclusion of the coroner's inquest he and the other jurors agreed at first upon a verdict of suicide, until a man by the name of Singleton suggested that if such a verdict was rendered it would affect the insurance on Skipper's life, whereupon the verdict was made to read "that he came to his death by a knife wound in his throat." The question was excluded, apparently, upon the ground that it was an indirect way of introducing in evidence the verdict of the coroner's jury. An exception was accordingly taken. The record discloses, however, that immediately after this ruling counsel for the defendant company was permitted to ask this witness substantially the same question as to what had in fact occurred at the inquest, and the witness answered it by saying, in substance, that the statement contained in the question propounded to him as to what had occurred at the inquest was in part true, and in part

untrue; that he did not know who made the suggestion about the insurance; that it was a consensus of opinion that the jury did not know what occasioned Skipper's death; and that they did not have any evidence at the time of the sitting of the coroner's jury. He further said that it was a five-minute jury, that the jury did not make any investigation at the time, that facts which afterwards developed gave them a better understanding of the case, and that they were all practically agreed that he must have been murdered. He also remarked in the same connection, and in explanation of the incident, that a man has a right to change his mind after an investigation. If the question that was propounded to this witness on his cross-examination and excluded was a proper question for any purpose,—as to which we express no opinion,—we conclude that the action which was immediately taken by the court, in permitting the witness to detail in full what did in fact occur at the coroner's inquest, cures whatever error was at first committed, and deprives the exception of any merit.

What has been said covers the material questions that have been presented for our consideration which deserve special notice.

Finding no error in the record that would warrant a reversal, the judgment of the lower court is affirmed.

SANBORN, Circuit Judge. I concur in the result in this case but I do not assent to the proposition that this action on the statutory bond is in any way affected by the act of 1893 (Sand. & H. Dig. Ark. § 4144), because, in my opinion, this is not an action on a policy of insurance.